CASH REGISTER COMPANY v. TOWNSEND.

*Fraud, Elements—Deceit—Cancellation of Contract—
Pleadings.*

(Filed March 28, 1905).

1. Where, in an action to recover balance due upon a contract for the purchase of a cash register, the defendant admits the execution of the contract and the delivery of the machine and the amount due, but asks to have the contract cancelled, alleging, as the ground therefor, that its execution was induced by false representations of plaintiff's agent, the plaintiff was entitled to judgment on the pleadings, in that the answer failed to allege that such representations were known by the agent to be false, or not knowing them to be true, he made them with a fraudulent intent or with reckless or wanton disregard of the truth.

2. The material elements of fraud are (1) misrepresentation or concealment, (2) an intention to deceive, or negligence in uttering a falsehood with intent to influence the act of others, and (3) the success of the deceit in influencing the act of the other party.

3. Expressions of commendation or of opinion, or extravagant statements as to value, or prospects, or the like, are not regarded as fraudulent in law.

4. A statement by plaintiff's agent to defendant that the use of a cash register would save the expense of a book-keeper is not a misrepresentation of a subsisting fact, but nothing more than "dealers' talk" puffing his wares.

ACTION by National Cash Register Company against B. W. Townsend, trading as Townsend Grocery Company, heard by *Judge G. W. Ward* and a jury, at the December Term, 1904, of the Superior Court of ROBESON County.

This was a civil action brought by plaintiff against defendant, in which plaintiff seeks to recover of defendant the sum of $480, balance due under a contract for the purchase of a cash register sold and delivered by plaintiff to defendant.

The plaintiff alleged the execution of the contract, the delivery of the machine thereunder and the amount due. The defendant admitted the delivery of the machine and at the trial admitted the execution of the contract, but denied the indebtedness, alleging that he was induced to purchase the machine by the fraudulent representation of one Stronach, the plaintiff's agent, and prays that the contract be rescinded.

The Court submitted the following issues:

1. "What is the balance due under the contract mentioned in the pleadings?"  Ans.  "$480."

2. "Was the defendant induced to purchase the cash register by the false representations of the agent of plaintiff as set forth in the answer?"  Ans. "Yes."

3. "Did the defendant offer to surrender the said cash register to the plaintiff upon discovery of said false representation?"  Ans.  "No."

4. "What is the actual market value of the said cash register?"  Ans.  "$350."

From a judgment for the plaintiff for $325 and costs, he appealed.

*McLean, McLean & McCormick,* for the plaintiff.
*McIntyre & Lawrence,* for the defendant.

BROWN, J., after stating the facts.  It is unnecessary to consider the fifty-three exceptions in the record.  The plaintiff requested the Court to charge that upon the whole evidence the plaintiff is entitled to recover of the defendant the sum of $480.  We are of opinion that such instruction should have been given, or rather that at the close of the evidence, with the admissions of the parties, such should have been the judgment of the Court.  It is admitted that the defendant purchased the cash register at the price of $505 and that he paid $25 on it; that the same was delivered to him,

and there is no claim made of any defect in the mechanical construction of the machine. The defendant signed a written contract securing the purchase of the machine and stipulating the dates of payment. The defendant sets up an equitable defense, that the execution of the contract was induced by the false and fraudulent representations and deceit of the plaintiff's agent who sold him the machine, and asks for a rescission and cancellation of the contract. The burden of proof is therefore upon the defendant to establish such allegations by a preponderance of the evidence, and failing to do so, the plaintiff is entitled to judgment for the balance due upon the contract price.

The allegations relating to deceit and fraud in the answer charge that the agent of the plaintiff stated to the defendant that the use of the cash register would save the expense of a book-keeper; that the books could be kept upon the machine, and that it would not take half the time to keep the defendant's books as was required without a machine, and that it would save half of one clerk's time and that the machine could be operated by a person of ordinary intelligence. We note that the answer fails to allege that such representations were not only false but were known by the agent to be false, or, not knowing them to be true, he made them with a wrongful and fraudulent intent, or with reckless or wanton disregard of the truth. For such omission the Court might well have rendered judgment upon the pleadings. But as the case was tried before the jury, we have considered it as if such necessary averments were in the answer.

The material elements of fraud, as laid down by the text writers, are, first, misrepresentation or concealment; second, an intention to deceive, or negligence in uttering falsehoods with intent to influence the actions of others; and third, the success of the deceit in influencing the action of the other party. To constitute legal fraud, which will warrant the

rescission of a contract, there must be a false representation of a material fact. There are cases in the books where courts of equity have afforded relief from the consequences of innocent misrepresentation. Contracts induced thereby have, in some instances and under peculiar circumstances, been set aside; but in all the cases, the misrepresentation was of a material and subsisting fact. No particular rule can be laid down as to what false representation will constitute fraud, as this must necessarily depend upon the facts of each case, the relative situation of the parties and their means of information. But all the authorities are to the effect that where the false representation is an expression of commendation or is simply a matter of opinion, the courts will not interfere to correct errors of judgment. *Walsh v. Hall,* 66 N. C., 236. The law will not give relief unless the misrepresentation be of a subsisting fact. *Hill v. Gettys,* 135 N. C., 375.

What has been called "promissory representation," looking to the future as to what the vendee can do with the property, how much he can make on it, and, in this case, how much he can save by the use of it, are on a par with false affirmations and opinions as to the value of property, and do not generally constitute legal fraud. Benjamin on Sales (7 Ed.), 483, *et seq.; Godron v. Parmalee,* 2 Allen (Mass.), 212; *Long v. Woodman,* 58 Me., 52, and cases cited.

· Mr. Clark in his work on Contracts states in substance that commendatory expressions or exaggerated statements as to value or prospects, or the like, as where a seller puffs up the value and quality of his goods, or holds out flattering prospects of gain, are not regarded as fraudulent in law. (Pp. 332-334). It is the duty of the purchaser to investigate the value of such expressions of commendation. He cannot safely rely upon them. If he does, he cannot treat it as fraud either for the purpose of maintaining an action of deceit or for the purpose of rescinding a contract at law or in

equity. *Saunders v. Hatterman,* 24 N. C., 32; 14 Am. & Eng. Enc. (2 Ed.), 34, and cases cited.

Mr. Kerr in his work on Fraud and Mistake, at page 83, says: "A misrepresentation to be material should be in respect of an ascertainable fact as distinguished from a mere matter of opinion. A representation which merely amounts to a statement of opinion goes for nothing, though it may not be true, for a man is not justified in placing reliance on it."

Again, "A man who relies on such affirmation made by a person whose interest might so readily prompt him to invest the property with exaggerated value does so at his peril, and must take the consequences of his own imprudence."

The evidence relied on by the defendant is as deficient in proving the necessary elements of legal fraud as the answer is in alleging them. It tends to prove that Stronach, the plaintiff's agent, approached the defendant for the purpose of selling him a cash register; that he stated to the defendant that if he would use the cash register credit system he could do the same business he was doing with one clerk less or do away with a book-keeper; that the defendant said if that was true he would take one; that defendant's brother had a cash register which looked like the one plaintiff sold defendant; that the next morning the defendant sent his book-keeper to see his brother's machine and report upon it; that when he came back and reported, the defendant signed the contract and bought the machine. According to the defendant's own evidence the machine worked all right, and it was only a question of the time it took the defendant's clerks to operate it. The defendant testified that he did not know that the machine had an adding attachment. He said: "The only objection I had to it was it took a little more time. I asked my brother, who had a cash register, about his and he reported

that the cash register is a good thing." The defendant further testified: "Neither I nor my clerks have ever had any experience with a machine of this kind. I knew nothing about one. Stronach told me that the trouble with the machine was that I had not sufficiently tried it. We used the cash register only one week. It took us about twice as long." The defendant's book-keeper testified: "The machine was perfect from a mechanical standpoint. I cannot say that it would take me twice as long with the machine as it would with the books. The more familiar I became with it, the faster I could work it. The more it was used, the better it would work. We did not use it over two weeks. I had never had any previous experience with cash registers." Another witness for the defendant said: "The cash part was all right. The credit part did not work well. If we had tried it longer, it might have worked better."

This evidence does not disclose any misrepresentation of a subsisting fact. The language of the agent at best was nothing more than "dealer's talk," commending his wares, and possibly exaggerating what the machine could do. There is no evidence of a fraudulent misrepresentation, or that the defendant acted entirely upon such representation; and there is no evidence that the agent knew such statements to be false when he made them. The evidence shows that the defendant undertook to investigate the truth and value of the agent's representations on his own account when he sent his book-keeper to examine and inquire into the value of his brother's machine, and did not sign the contract until his book-keeper reported. There is no evidence to show that the value of this machine as a labor-saving device was peculiarly within the knowledge of the agent; that it was not known to other persons to whom the purchaser might have applied for information; that the agent did anything to prevent investigation on his part. Such evidence is regarded

by some judges as material in cases of this kind. *Conly v. Coffin,* 115 N. C., 566. "When the purchaser undertakes to make an investigation of his own, and the seller does nothing to prevent this investigation from being as full as he chooses to make it, the purchaser cannot afterwards allege that the vendor made misrepresentations." *Jennings v. Broughton,* 5 De Gex M. & G., 126; *Development Co. v. Silva,* 125 U. S., 259.

The evidence fails to show that the defendant has given the machine a fair trial. On the contrary, his own witnesses testified that the more they used it, the more expert they became. It is common knowledge and every-day experience that the wonderful products of mechanical skill, which in their operations almost approach human intelligence, require practice in order that the best results may be produced. It is possible that if the defendant and his clerks persevere in their efforts to master this machine, he may agree with his brother, that "the cash register is a good thing." But if it turns out that he has sustained loss, not from any mechanical defect in the machine, he must attribute it to his own negligence and indiscretion. He did not exercise that diligence in making inquiry which the law expects of a reasonable and careful person. *Vigilantibus et non dormientibus jura subveniunt.*

New Trial.