ALVAH EARLY v. ALVIN J. ELEY, IRA C. AINSLEY, BANNER NUT COM-
PANY, A CORPORATION, ALVIN J. ELEY, IRA C. AINSLEY, WILLIAM R.
RAYNOR, B. Z. BROWN, AND COY BROWN, PARTNERS TRADING AS
BANNER NUT COMPANY, AND INDIVIDUALLY.

(Filed 28 March, 1956.)

**1. Pleadings § 1—**

The court's denial of defendant's motion to dismiss for failure of plain-
tiff to file the complaint in due time will not be disturbed, since the court
in its discretion has authority to enlarge the time for pleading, G.S. 1-152,
and the exercise of such discretion is not reviewable.

**2. Fraud § 1—**

In order to recover for fraud, plaintiff must show (1) a false representa-
tion or concealment of a material fact; (2) reasonably calculated to de-
ceive; (3) intended to deceive; (4) does in fact deceive; (5) resulting in
damage.

**3. Fraud § 3—**

In the sale of stock, statements, "the stock is gilt edged"; "nothing better
can be bought," etc., are expressions of commendation or opinion which
cannot constitute fraud.

**4. Fraud § 4—**

The failure of the presiding officer at a stockholders' meeting to chal-
lenge the statement of an auditor, not directed to anyone in particular,
though more applicable to the person who had made a prior audit, to the
effect that the stock was watered and that the books showed a 12 per cent
profit "when you know you have not made it," cannot be *held* an admis-
sion by such presiding officer of the truth of the statement so as to fix him
with *scienter* in an action against him for fraud, it having been his duty
to keep the debate within proper bounds rather than to take part in it.

**5. Appeal and Error § 51—**

Evidence erroneously admitted will nevertheless be considered on appeal
in passing upon the sufficiency of plaintiff's evidence to overrule nonsuit,
since the admission of such evidence may have caused plaintiff to omit
competent evidence of the same import.

**6. Fraud § 4—**

Subsequent acts and conduct of persons charged with fraud may be
competent on the issue of original intent and purpose.

**7. Fraud § 12—Evidence of fraud held insufficient to be submitted to the
jury.**

Plaintiff alleged he was induced to purchase stock in a corporation by
the fraudulent representation of the individual defendant that the corpo-
ration had made a 12 per cent profit during the preceding year. Plaintiff's
evidence failed to show that defendant corporation was insolvent at the
time it was organized, that the individual defendant knew that the corpo-
ration had not made a 12 per cent profit as represented, but tended to show

reason for belief that the corporation had in fact made such profit. The evidence further disclosed that the other stockholders, including the individual defendant, thereafter bought stock, and there was no evidence that they had ever received any money in dividends. *Held:* The evidence is insufficient to show *scienter* on the part of the individual defendant in making the representation, or that he made such representation in reckless disregard of its truth or falsity, and judgment of nonsuit should have been entered.

**8. Fraud § 4—**

Proof of *scienter* is necessary in an action for deceit.

PARKER, J., took no part in the consideration or decision of this case.

APPEAL by Alvin J. Eley and Banner Nut Company from *Joseph W. Parker, J.*, September Term 1955, HERTFORD Superior Court.

Civil action in tort instituted 27 March 1950 by the plaintiff for the recovery of $1,000 paid by him for capital stock in the corporate defendant which he alleges he was induced to purchase by fraud. At the time summons was issued an order was obtained for the adverse examination of the individual defendants to enable the plaintiff to file his complaint. The examination was begun but for various reasons was never actually completed.

On 16 March 1953, the plaintiff filed his complaint. The defendants moved to dismiss the action for failure to file the complaint in due time. After a hearing on 23 April 1954, Judge Bone found as a fact that the plaintiff was not guilty of laches, denied the motion to dismiss and allowed time to answer.

The material allegations of the complaint, disregarding its numbered paragraphs, are:

1. Prior to April, 1947, the individual defendants and J. P. Nowell were the owners of a partnership business—the Banner Nut Company.

2. About 7 April 1947, the Banner Nut Company, a corporation, was organized by the individuals comprising the partnership. All the assets of the partnership were conveyed to the corporation, in return for which the corporation assumed the liabilities of the partnership and issued capital stock to the individual defendants.

3. The stock issued was based upon an excessive valuation of the partnership assets conveyed to the corporation and a "fantastic" valuation placed upon Good Will.

4. The corporation was insolvent at the time of its organization and at all times thereafter, and known to be so by the defendants, its organizers, and that its stock was worthless.

5. Notwithstanding the insolvency of the corporation, the individual defendants, including Alvin J. Eley, its president, "planned to sell for cash additional capital stock—knowing it was worthless."

6. Pursuant to the plan to sell additional stock, Alvin J. Eley, president, with the authority of his codefendants, solicited the plaintiff to purchase stock by falsely and fraudulently representing that the partnership had made a net profit of 12 per cent during the preceding year; that said corporation was then doing a highly profitable business, and that investment in its capital stock was "as strong as the Rock of Gibraltar."

7. The representations were false and fraudulent, were intended to and did deceive the plaintiff; "that all such was said and done by the said Eley . . . under the authority and with the knowledge of his codefendants pursuant to the common scheme."

8. The plaintiff on 29 April 1947, relying on the representations made to him by Eley, purchased 10 shares of stock in Banner Nut Company for $1,000. The stock turned out to be worthless to the plaintiff's damage in the sum of $1,000.

The cause was tried before a jury in September, 1955. At the close of the plaintiff's evidence judgment of nonsuit was entered as to all defendants except Alvin J. Eley and the corporation. Motions for nonsuit were overruled as to them. The jury returned a verdict for the plaintiff on the issue of fraud and assessed his damages at $1,000. From a judgment on the verdict the defendants appealed, assigning errors.

*W. D. Boone and E. R. Tyler for plaintiff, appellee.*

*Jones, Jones & Jones, John R. Jenkins, Jr., and Gay & Midyette for defendants, appellants.*

HIGGINS, J.    The defendants contend they were entitled to have the action dismissed as a matter of right for failure on the part of the plaintiff to file his complaint in due time. The contention cannot be sustained. G.S. 1-152 authorizes the judge, in his discretion, to enlarge time for pleading. *Alexander v. Brown,* 236 N.C. 212, 72 S.E. 2d 522; *Aldridge v. Ins. Co.,* 194 N.C. 683, 140 S.E. 706. The exercise of the court's discretion is not subject to review. *Smith v. Ins. Co.,* 208 N.C. 99, 179 S.E. 457; *Brown v. Hillsboro,* 185 N.C. 368, 117 S.E. 41.

At the close of the plaintiff's evidence the court entered judgment of nonsuit against all defendants except Alvin J. Eley and the corporation; and from that judgment the plaintiff did not appeal. The defendants other than Eley and the corporation having been discharged of liability, leaves for consideration here the acts and conduct of Eley alone.

In this case no fiduciary or confidential relationship is alleged. In order to sustain a recovery on the ground of fraud the evidence, therefore, must establish the following: (1) A false representation or con-

cealment of a material fact; (2) reasonably calculated to deceive; (3) intended to deceive; (4) does in fact deceive; (5) resulting in damage. *Vail v. Vail,* 233 N.C. 109, 63 S.E. 2d 202; *Ward v. Heath,* 222 N.C. 470, 24 S.E. 2d 5; *Harding v. Ins. Co.,* 218 N.C. 129, 10 S.E. 2d 599.

According to the plaintiff the following statements made by Eley induced him to purchase stock in the corporation: " 'I have something for you and I want to sell you some stock in Banner Nut Company. We made 12½ per cent last year . . . here it is on the paper here . . . I am letting you in on the ground floor as a favor. It is gilt edged. You cannot buy anything better.' I bought the stock on account of Mr. Nowell being manager and on my reliance on Mr. Eley that they were making money . . . bought on representations made to me that the stock was better than Government Bonds . . . I don't know whether Banner Nut Company was insolvent or solvent at the time I bought my stock. I have never seen the books and of my own knowledge I cannot say the partnership or the corporation never made any money. I can only tell what the auditor said." (The plaintiff had reference to a statement made at a stockholders meeting in August, 1948, by Mr. Moran who had audited the books for five months ending 31 December 1947. Mr. Moran's statements will be quoted and discussed later.) The statements, "the stock is gilt edged"; "that nothing better can be bought," are expressions of opinion and cannot support a finding of fraud. *Cash Register Co. v. Townsend,* 137 N.C. 652, 50 S.E. 306; *Williamson v. Holt,* 147 N.C. 515, 61 S.E. 384; *Harding v. Ins. Co., supra.* In the *Cash Register Company* case this Court said: "All the authorities are to the effect that when the false representation is an expression of commendation or is simply a matter of opinion, the courts will not interfere to correct errors of judgment."

Mr. J. P. Nowell was called as a witness for the plaintiff. In the beginning of his examination he testified: "To the best of my knowledge the first six months we were in production we lost about $3,000; for the next six months I believe the books will show we made $3,600." There is no evidence he passed this information on to the defendant Eley. Mr. Nowell was one of the six owners and partners in Banner Nut Company and one of the six original stockholders in the corporation. He was the manager of the partnership throughout its existence. In the course of his testimony he made this significant statement: "As managing partner of the partnership I worked with Mr. Thedick, the auditor, when there making audits for the partnership. *The other partners had only such information as I furnished to them and from Mr. Thedick's audits.*" In speaking of the amount of loss and profit, the witness was speaking from memory. His testimony, therefore, was qualified by later statements when confronted with the books and

records.   There was no evidence to indicate the defendant Eley knew about the losses.   On the contrary, the following information came from the witness, summarized in part and quoted in part:

Mr. Thedick's audit of 31 January 1947, showed fixed assets of the partnership at cost as follows: Land, $2,011.70; buildings, $16,418.89; machinery and equipment, $22,653.32; furniture and fixtures, $741; automobiles, $2,217.55; total, $42,030.76.   From the above was deducted $2,373.66 for depreciation.   The total of cash on hand, accounts receivable, inventories and supplies (at the lower of cost or market), $52,-013.28.   Total assets of the partnership, $96,150.27.   Total liabilities shown by the audit were $45,189.23.   As of the date of the audit the net worth of the partnership was, therefore, $51,600.   All this property was conveyed to the corporation which was capitalized at exactly that amount.   Each of the six incorporators was issued 86 shares of stock. "So that the corporation started business with a net worth of approximately $51,000."   The partnership had been in business a little less than a year and a half.   It began with an investment of $6,500 by each of the six partners, totaling $39,000.   It conveyed property worth net $51,000.   The $12,000 difference represented profit.   "I think we set up this amount as profit at first and were advised by our auditor that if we set it up as profit we would have to pay income tax . . . He advised that it be put in as Good Will."   Mr. Moran audited the corporation's books for the period ending December 31, 1947.   He complained about the item of Good Will, and in January, 1948, each of the original six stockholders surrendered his 86 shares of stock and received in lieu thereof 65 shares, eliminating all the stock based on good will.   "At first I was not agreeable to the reissuance of stock because I thought it was correct—thought the issuance of stock for $8,600 to each of us based on the original statement of the corporation and based on Good Will was correct.   I later agreed to accept less stock than I originally had."

The minutes of 4 September 1946, of the partnership show for the month of August, 1946, a profit of $3,400.   "I think I explained to my associates that the figure represented gross, not net profits . . . The minutes do not show whether gross or net profits.   I signed those minutes.   The minutes of October 1, 1946, were read and approved and signed by me and the other partners.   I reported amount of profit for the month of September of $4,952.04.   No statement whether gross or net profits.   Minutes of November 5, 1946, were read and approved and signed by me and the other partners.   I reported amount of profit for month of October $4,500.   No statement whether gross or net profits." Mr. Thedick's audit for the period ending 31 January 1946 showed gross profits for the preceding six months as $13,222.13; and for eight months

ending 31 March 1947, a gross profit of $15,440.95; and after deducting operating expenses and $1,065 for discarded peanut bags, $1,209.24 for interest, and about $400 for donations, accounts written off and discount allowed, the net income was $3,466.99, "which was the last information the other incorporators had before the motion was made to sell additional stock."

Departing from Mr. Nowell's testimony for a moment, it may be observed that interest withdrawn from the partnership profits in the amount of $1,209.24 and paid on partnership obligations, if added back to the income for the period covered by the audit (eight months), would indicate a profit for that period of slightly more than 12 per cent. If the figures made by Mr. Nowell in the operation of the partnership business did not correctly reflect the state of that business, there is neither evidence in the partnership records nor in the testimony of Mr. Nowell, or of Mr. Early, to indicate the individual defendant had knowledge of that fact. The plaintiff seeks to charge the defendant Eley with such knowledge by reason of his failure to reply to a statement made by Auditor Moran in a stockholders meeting in August, 1948. According to the evidence of the plaintiff, Moran said: "Listen here, you fellows cannot do this. You have revalued your property, watered your stock and show you made 12 per cent when you know you have not made a cent . . . You fellows ought to take this off your books (referring to Good Will) you have shown a profit when you know you have not made it."

At the time of the foregoing statements the defendant was the presiding officer at the meeting. As such it was his duty to preserve orderly procedure in the meeting. It would appear to be his duty to keep the debate within proper bounds rather than to take part in it. Moran's remarks were not directed at anyone in particular, though apparently more applicable to Mr. Nowell than any other stockholder. He had made the records which "show you made 12 per cent and you ought to take this out of your books (referring to Good Will)." It appears Good Will had been eliminated more than eight months previously by the recall of the stock based thereon.

Can we say it was the duty of the defendant to challenge and deny Moran's statements or that his failure to do so may be considered an admission of their truth? The statements he made in the meeting were hearsay and represented his conclusions from the entries in the books of the partnership kept by Mr. Nowell. Under the rules of evidence the statements were inadmissible and should have been excluded. Though erroneously admitted, nevertheless, we must consider them as a part of the plaintiff's case on the question of nonsuit for the reason that their admission may have caused the plaintiff to omit competent evidence of

the same import. *Cherry v. Warehouse,* 237 N.C. 362, 75 S.E. 2d 124; *Supply Co. v. Ice Co.,* 232 N.C. 684, 61 S.E. 2d 895; *Ballard v. Ballard,* 230 N.C. 629, 55 S.E. 2d 316; *Gibbs v. Russ,* 223 N.C. 349, 26 S.E. 2d 909; *Brown v. Montgomery Ward,* 217 N.C. 368, 8 S.E. 2d 199; *Midgett v. Nelson,* 212 N.C. 41, 192 S.E. 854.

Evidence from the plaintiff's witness (Nowell) shows the individual defendant bought 10 shares of stock on each of three separate occasions (the last on 14 June 1948) ; that his brother, Dr. Eley, bought 50 shares, the last on 30 January 1948; and other original stockholders (except Nowell) and their families made comparable purchases. The evidence fails to show that any defendant received from the corporation one cent in dividends. Such is hardly the conduct of men seeking to defraud. Subsequent acts and conduct are competent on the issue of original intent and purpose. *Braddy v. Elliott,* 146 N.C. 578, 60 S.E. 507.

Proof is lacking that the corporation was insolvent at the time it was organized and *a fortiori* the individual defendant knew of such insolvency. There is also failure of proof the individual defendant made any false statement knowingly or with reckless disregard as to whether true or false. Proof of *scienter* is necessary in an action for deceit. *Harding v. Ins. Co., supra; Cash Register Co. v. Townsend, supra.*

This case is easily distinguishable from the case of *Zager v. Setzer,* 242 N.C. 493, 88 S.E. 2d 94. In the *Setzer case* the plaintiff, as a part of the negotiations, represented to the defendant that the previous operator of the theatre had a weekly gross income between $600 and $700. Under defendant's management, the income ranged from a high of $478 to a low of $222, averaging $320 per week. The former operator testified his highest gross weekly income was $443, and his average was $343. Evidence was lacking to show the plaintiff actually knew his statements were false, but was sufficient to support the inference that the representations were recklessly made when he was ignorant as to their truth or falsity. The statements so made are an adequate substitute for *scienter.* (Citing cases.) In the instant case, the evidence shows the defendant had ample ground to believe the partnership had made 12 per cent profit and that the corporation was solvent when organized.

The motion for judgment as of nonsuit, both as to the individual defendant and the corporation, should have been allowed.

Reversed.

PARKER, J., took no part in the consideration or decision of this case.