Edwin G. MOORE, II and Maribelle R. Moore, Plaintiffs,

v.

Mary Q. MIDGETTE (as Personal Representative of Elizabeth Q. Parkerson, Deceased) and Martin Kellogg, Trustee, Defendants,

Continental Insurance Co. et al., Additional Defendants.

Civ. No. 467.

United States District Court
E. D. North Carolina,
Elizabeth City Division.

April 12, 1966.

Charles C. Shaw, Jr., of Leroy, Wells & Shaw, Elizabeth City, N. C., George Eric Rosden, Washington, D. C., for plaintiffs.

John H. Hall, Forrest V. Dunstan, Elizabeth City, N. C., for defendant Parkerson.

J. Kenyon Wilson, Jr., of Wilson & Wilson, Elizabeth City, N. C., for additional defendants.

LARKINS, District Judge:

### SUMMARY

This cause came before the Court for trial without the intervention of a jury. It arose out of a real estate transaction and the prayer for relief is directed to the equity powers of the Court. Jurisdiction is based on diversity of citizenship and the requisite statutory amount in controversy.

Plaintiffs seek to rescind a contract of purchase and sale for certain hotel properties located at Nags Head, Dare County, North Carolina. Plaintiffs further seek to have determined void, and thereby rescinded, the related note secured by a Deed of Trust executed by them for the purpose of financing the balance of the purchase price of the hotel property in question. Martin Kellogg was named as trustee in said Deed of Trust and has been named as a co-defendant in this action as trustee, since he holds the legal title to the locus in quo as trustee. In addition, plaintiffs seek to recover a monetary award for the amount of cash payment made by them to Elizabeth Q. Parkerson, now deceased, together with damages, interest, and costs of this action.

The basis of plaintiffs' action is that they were induced to enter into the purchase and sale contract and to execute the purchase money note and Deed of Trust, by virtue of alleged misrepresentations of fact made to them by Elizabeth Q. Parkerson, now deceased. Plaintiffs state they were made with a fraudulent intent.

Prior to the commencement of this action, but after the sale of the hotel property was consummated, there occurred substantial damage to the hotel as the result of a fire. Elizabeth Q. Parkerson, now deceased, upon the basis of a mortgage protection clause in hotel fire insurance policies, recovered an amount of $15,397.31 (Judgment, Superior Court, Dare County, June 29, 1962) from the insurance carriers. This was credited upon said indebtedness due by plaintiffs to decedent. These insurance carriers now insist they are interested parties, and have entered the action by permission of the Court as intervening additional defendants.

A prior action in the Superior Court of Dare County, State of North Carolina, has been instituted by plaintiffs, against defendant Elizabeth Q. Parkerson, now deceased, and the relief sought therein related to claims for monetary damages allegedly arising out of Elizabeth Q. Parkerson's improper conduct under a labor contract and to restrain the foreclosure of the purchase money deed of trust. This action has been referred to a Referee.

Before the Court for its determination at this time are the questions of whether decedent Parkerson made misrepresentations of such a nature and under such circumstances as to entitle plaintiffs to a rescission of the contract. Also before the Court is the question of the effect of the pendency of the preceding State action.

The original defendant, Mrs. Elizabeth Q. Parkerson, died on October 8, 1965. Her sister, Mrs. Mary Midgette, of Manteo, North Carolina, has been appointed personal representative of the estate of Elizabeth Q. Parkerson, deceased. Mrs. Midgette, therefore, has been substituted for the deceased Mrs. Parkerson.

## FINDINGS OF FACT

Elizabeth Q. Parkerson (hereinafter referred to as "decedent") and her husband successfully operated the Parkerson Hotel, the subject matter of this action, from 1936 to 1944. Decedent's husband died in 1944, and she continued thereafter to successfully operate the hotel through the tourist season of 1959.

From time to time, prior to the year 1960, the plaintiffs had stayed as paying guests at the Parkerson Hotel. During these stays, they became generally acquainted with the hotel property and with decedent.

In 1954, decedent had the first of a series of heart attacks; and by the end of the 1959 season, sometime after Labor Day, she seriously considered selling the hotel. Plaintiffs had also broached the subject of the sale of the hotel with decedent in August of 1959 (Tr. p. 3). Upon the advice of her physician, decedent determined to sell the hotel property; and on January 28, 1960, she wrote plaintiffs advising them of her intent as they had requested. (Plaintiffs' Exhibit No. 1).

On February 8, 1960, plaintiffs replied from their home in Washington, D. C., to decedent, acknowledging their interest in purchasing it. In this letter, many financial questions were raised. (Plaintiffs' Exhibit No. 2).

Before answering this letter of February 8, 1960, decedent, who had only a seventh-grade education, contacted her bookkeeper, Mr. J. A. Krider. She discussed finances with him, and he explained to her the various tax problems which would thereby arise. He specifically advised her to take a down payment of not more than $18,000 (30% of $60,000, the total purchase price defendant was asking). The remaining $42,000 was to be financed by an installment note, with a purchase money deed of trust as security therefore. (Depo. pp. 34–36).

Thereafter, on February 11, 1960, decedent responded to plaintiffs' inquiry in a sixteen-page, hand-written letter (Plaintiffs' Exhibit No. 3). She attempted to describe the lots and improvements thereon, of the hotel property, in detail. She also went into various financial matters. On page 13 of this letter, the following appears:

"Income was $40, thousand and some over.

"Total expenses. $21, thousand

"I have enough food, and supplies left on hand to last me all balance of year."

It is this statement which plaintiffs insist primarily misled them into purchasing the property. This statement, coupled with other statements pertaining to the state of repair of the structures, equipment and water system, are all alleged to have been deceiving and fraudulent. Decedent, in her deposition, insisted no fraudulent intent existed. She states the financial statement was in error, but it was made as the result of her confusion over financial matters. (Depo. pp. 60–61). She insisted further that the statements relating to structural conditions were essentially correct. (Depo. pp. 21–22).

On about March 11, 1960, plaintiff Edwin G. Moore, II, and a companion, a Mr. John O'Donnell (who was then a law student and is now an attorney), came to inspect the hotel properties. During this inspection, they took photographs of the premises. (Depo. pp. 4–5). An option to purchase was also drawn up by Mr.

O'Donnell at the direction of plaintiffs at this time and was executed by plaintiffs and decedent. Plaintiffs paid $200.00 for this option, which was granted by decedent to April 25, 1960 (Depo. pp. 4, 22 and 41).

For approximately two months following, telephone conversations were conducted between plaintiffs and decedent. Then, on or about May 15, 1960, plaintiff Edwin G. Moore, II, returned to the hotel with an attorney from Greenville, North Carolina, a Mr. Hite (Depo. p. 62). During this stay, and during the March visit to Nags Head, when plaintiff came with John O'Donnell, decedent's books were placed at the disposal of plaintiffs and their attorneys (Tr. pp. 4–5), and they examined them.

These books reflected decedent's receipts and disbursements from which her federal income tax return for the year 1959 was made (Tr. p. 22). This return was filed on April 15, 1960 (Plaintiffs' Exhibit No. 10). It reflected the operating expenses of the hotel property for the year 1959 in the sum of $24,627.35, with gross income in the sum of $28,234.91. The net profit for the year 1959 was $3,607.56, exclusive of an item of depreciation of $1,816.75.

Therefore, prior to the time the plaintiffs executed the contract to purchase the hotel properties and before they executed the related note and deed of trust (Plaintiffs' Exhibits No. 11, 12, 13 and 14), they had ample opportunity to, and did so inspect said properties. They also examined decedent's books and accounts to their satisfaction.

It is also clear from the conduct of Mrs. Parkerson, who made her property and books fully available to plaintiffs and who cooperated fully in assisting them in inspecting and managing the properties in question, that no fraudulent intent can be found from the evidence.

It is further noted that plaintiffs have pending in the State Superior Court of Dare County an action seeking monetary damages allegedly arising out of Mrs. Parkerson's conduct under the terms of an employment contract with plaintiffs.

The trustee, Martin Kellogg, is named co-defendant solely because he is the trustee in the purchase money deed of trust given as security for the purchase price of the hotel properties. Plaintiffs in the State Court action also seek to restrain foreclosure of the deed of trust.

The intervening insurance companies seek to become subrogated to the rights of the plaintiffs for the amounts paid to the trustee, Martin Kellogg, under the terms of the loss payable clause stated in the various insurance policies covering the mortgaged property, the subject of this litigation.

## CONCLUSIONS OF LAW

■ Of the numerous issues raised in this case, all must await the determination of the factual question of whether or not decedent's conduct was such as to amount to actionable fraud. In all actions tried without the intervention of a jury in the federal district courts, the court makes the factual determinations relating to such a question as this. Rule 52(a), Federal Rules of Civil Procedure; and Moore's Federal Practice, (2nd Ed., 1964), Sec. 52.03(1).

■■ The essential elements of actionable fraud are: (1) a false representation or concealment of a material fact; (2) which can be considered reasonably calculated to deceive; (3) and intended to deceive; (4) which in fact does deceive; (5) to the injury and damage of the deceived party. Early v. Eley, 243 N.C. 695, 91 S.E.2d 919 (1956). Each of these elements of fraud must be proven by the party asserting it, and a failure to prove any one element will be a failure to prove actionable fraud. Reserve Life Ins. Co. v. North, 255 F.2d 240, 241 (4th Cir., 1958), citing Early v. Eley, 243 N.C. 695, 91 S.E.2d 919, supra.

It is undisputed that Mrs. Parkerson's statement in her letter of February 15, 1960, (on page 13 thereof, and quoted above) was false. It does not appear, however, that the rest of her statements about the conditions of the hotel, and about which plaintiff complains, were false. The question is, therefore, wheth-

er or not this one statement, concededly false and which could have materially misled plaintiffs in respect to the all-important matter of finance, was so misleading as to entitle plaintiffs to relief.

In examining decedent's false statement in her letter of February 15, 1960, it is readily concluded that the first element of actionable fraud, as defined by the Courts of North Carolina, has been established. (This definition is controlling in this action, Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).)

■ Plaintiffs are also required to prove *all* the other elements of fraud. Lester v. McLean, 242 N.C. 390, 87 S.E.2d 886 (1955). It must be shown, therefore, that decedent reasonably calculated that this false statement would deceive plaintiffs. Of course, the decedent did not have to actually know her statement was false, or that it would actually deceive plaintiffs. Palomino Mills, Inc. v. Davidson Mills Corp., 230 N.C. 286, 52 S.E.2d 915 (1949). But if the false statement is made with a reckless indifference for the truth, the second element of fraud may be established under certain circumstances. Palomino Mills, Inc. v. Davidson Mills Corp., supra; Early v. Eley, supra; and Roberson v. Williams, 240 N.C. 696, 83 S.E.2d 811 (1954). These circumstances do not appear in the case at hand, however, the parties being on at least equal terms in their dealings with one another, and no particular duty being placed on decedent to undertake an investigation for plaintiffs' benefit. It also does not appear that decedent was in a peculiar position to better know the truth at the time the transaction was consummated. See Palomino Mills, Inc. v. Davidson Mills Corp., supra; and Roberson v. Williams, supra.

■ In light of decedent's subsequent conduct; that is her willingness to have plaintiffs and their agent, John O'Donnell, a law student, and their attorney, Mr. Hite, freely examine her premises and her financial records, the intent to deceive cannot be accepted. Also, when considering her health, age, education and reliance upon her bookkeeper, Mr. Krider, the plaintiffs are found to have failed in their duty to carry the burden required of them in an action such as this. Lester v. McLean, supra.

■ Assuming arguendo, that decedent did make the false statement concerning the material matter of finances with a reckless indifference for the truth, it cannot be found that plaintiffs were deceived by it. Before plaintiffs can insist that they relied upon decedent's false statement to the extent that they were deceived, they must show due diligence in trying to ascertain the true facts. Or, they must show they were prevented from ascertaining the true facts by an artifice or representation of such character as would reasonably lull them into complacency. Calloway v. Wyatt, 246 N.C. 129, 97 S.E.2d 881 (1957).

■ When the purchaser has had full opportunity to inspect the property and the financial statement of a seller subsequent to the time a false representation was made, the purchaser cannot later be heard to complain of the false statement. One cannot complain of a false statement which did not deceive, or by the use of reasonable prudence, it would not have deceived. Cox v. Johnson, 227 N.C. 69, 40 S.E.2d 418 (1946).

It is the law of this case, then, that plaintiffs must have reasonably relied upon decedent's statement to their deception and damage before they will be entitled to relief. Eastern Steel Products Corp. v. Chestnutt, 252 N.C. 269, 113 S.E.2d 587 (1960). From the facts as found in this case, plaintiffs cannot be said to have reasonably relied upon any statement of decedent, all such statements having been made prior to the time plaintiffs were given full opportunity to inspect decedent's books and premises. Plaintiffs did so inspect in person and/or through their agent.

## ORDER

Therefore, it is ordered that plaintiffs, having failed to establish their claims by a preponderance of the evidence, go without day, and their claim for relief be, and the same is hereby dismissed.