HUGH A. RAGSDALE, SR. v. SHERMAN KENNEDY, BILL CLEVE, AND WILLIAM B. BROWN

No. 76

(Filed 26 November 1974)

**1. Pleadings § 38; Rules of Civil Procedure § 12— motion for judgment on pleadings**

A motion for judgment on the pleadings is the proper procedure when all the material allegations of fact are admitted in the pleadings and only questions of law remain; when the pleadings do not resolve all the factual issues, judgment on the pleadings is generally inappropriate. G.S. 1A-1, Rule 12(c).

**2. Pleadings § 38; Rules of Civil Procedure § 12— judgment on pleadings — burden of proof**

Judgment on the pleadings is a summary procedure and the judgment is final; therefore, the movant is held to a strict standard and must show that no material issue of fact exists and that he is clearly entitled to judgment.

**3. Pleadings § 38; Rules of Civil Procedure § 12— motion for judgment on pleadings — consideration of allegations**

Upon motion for judgment on the pleadings, all well pleaded factual allegations in the nonmoving party's pleadings are taken as true and all contravening assertions in the movant's pleadings are taken as false.

**4. Pleadings § 38; Rules of Civil Procedure § 12— motion for judgment on pleadings — consideration of nonmovant's pleadings**

All allegations in the nonmovant's pleadings, except conclusions of law, legally impossible facts, and matters not admissible in evidence at the trial, are deemed admitted by the movant for purposes of the motion for judgment on the pleadings.

**5. Corporations § 13; Fraud § 9— sale of corporate stock — misrepresentations that corporation was "gold mine" and "going concern" — sufficiency of allegations of fraud**

In an action by the former president and general manager of a corporation to recover on a promissory note given by defendant corporate directors for the purchase of stock in the corporation, defendants stated a counterclaim of fraud sufficient to overcome plaintiff's motion for judgment on the pleadings where they alleged that plaintiff ran the corporation without holding any meetings of the board of directors and without interference from defendants, and that plaintiff falsely represented to defendants that the business was a "gold mine" and a "going concern" when he knew that the corporation's cash funds had decreased by $20,000 since he became president, that $20,000 had been borrowed for the corporation, that a corporate demand note was delinquent, and that the corporate working capital was so depleted and corporate income so inadequate that the corporation could not pay its normal operating expenses.

Ragsdale v. Kennedy

**6. Fraud § 1— elements of fraud**

The essential elements of actionable fraud are: (1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party.

**7. Fraud § 3— subsisting or ascertainable fact**

To constitute fraud, a subsisting or ascertainable fact as distinguished from a matter of opinion or representation relating to future prospects must be misrepresented.

**8. Fraud § 3— definite and specific misrepresentation**

Generally, a misrepresentation must be definite and specific to constitute fraud, but the specificity required depends upon the tendency of the statement to deceive under the circumstances.

**9. Corporations § 13; Fraud § 3— seller of corporate stock — describing business as "gold mine" — duty to disclose financial circumstances**

When the president and general manager of a corporation undertook to describe the business as a "gold mine" and a "going concern" to prospective purchasers of his stock in the corporation, he incurred the concomitant duty to make full disclosure of any extenuating financial circumstances which counteracted his positive assertions concerning the condition of the corporation.

**10. Fraud § 3; Vendor and Purchaser § 6— seller's duty to disclose defects to buyer**

When the circumstances make it the duty of the seller to apprise the buyer of defects in the subject matter of the sale known to the seller but not to the buyer, suppression of the defects constitutes fraud.

Chief Justice BOBBITT not sitting.

DEFENDANTS appealed from decision of the Court of Appeals, 22 N.C. App. 509, 207 S.E. 2d 301 (1974), upholding judgment of *Cowper, J.,* 11 February 1974 Session, ONSLOW Superior Court.

Plaintiff brought this action to recover judgment on a promissory note in the sum of $20,000.00 plus interest and reasonable attorney's fees according to the terms of the note.

Plaintiff's complaint contains four numbered allegations as follows:

"(1) That on or about November 22, 1972, defendants executed and delivered to plaintiff a promissory note, whereby defendants promised to pay to plaintiff or order 60 days from date, the sum of Twenty Thousand Dollars ($20,000.00), with interest thereon at the rate of six and one-half (6½) percent per annum; a copy of said note is hereto attached as Exhibit 'A.'

(2) That defendants have paid nothing on the principal amount of said note, and have paid interest through March 7th, 1973.

(3) That said note provides, that, in addition to the outstanding balance, the holder shall be entitled to recover reasonable attorney's fees to the extent permitted by applicable law.

(4) That said defendants, jointly and severally, owe to the plaintiff the amount of said note, to wit, Twenty Thousand Dollars, ($20,000.00), and interest from March 7th, 1973, at six and one-half (6½) percent per annum, and attorney's fees in the amount of Three Thousand Dollars ($3,000.00)."

A copy of the note designated Exhibit "A" was attached to the complaint and reads as follows:

"November 22, 1972          $20,000.00

60 days after date, for value received, we promise to pay Hugh A. Ragsdale, Sr., or order at his . . . where borrowed Twenty Thousand and 00/100 Dollars

Interest rate before maturity 6½% per annum; after maturity, at highest rate permitted by applicable law not exceeding 12% per annum. All parties to this note, including the makers, endorsers, sureties and guarantors, and whether bound by this or by separate instrument or agreement, hereby waive presentment for payment, demand, protest, notice of non-payment or dishonor and of protest, and any and all other notices and demands whatsoever, and hereby consent that at any time, or from time to time, payment of any sum payable under this note may be extended without notice, whether for a definite or indefinite time, in the event any such party to this note defaults in the payment of any obligation due any creditor, then, at the option of the holder hereof, this note together with accrued interest and all other loan charges thereon shall become immediately due and payable. Any credit life insurance securing the payment of this note was effected solely at the option of the undersigned insured. In the event the indebtedness evidenced hereby is collected by or through an attorney, the holder shall be entitled to recover reason-

able attorney's fees to the extent permitted by applicable law.

Given under the hand and seal of each party hereto.

s/ SHERMAN KENNEDY (SEAL)
s/ BILL CLEVE          (SEAL)
s/ WILLIAM B. BROWN (SEAL)

Due: January 22, 1973"

The defendants, answering the complaint, asserted four defenses which are quoted below:

"FIRST DEFENSE: The complaint fails to state a claim against defendants upon which relief can be granted.

SECOND DEFENSE: 1. Defendants admit the allegations contained in paragraphs (1), (2) and (3) of the complaint.

2. Defendants deny each and every other allegation contained in the complaint.

THIRD DEFENSE: Further answering the complaint and as a defense and set off the defendants allege and say:

1. Onslow Livestock Corporation, a North Carolina corporation, was formed in October of 1970, with an original capitalization of 45,000 shares. Raymond Smith was the President and General Manager of the business until ill health forced him to resign in December of 1970. At that time Jack Hinson became President and General Manager and managed the business until he sold his stock interest on June 6, 1972. At that time plaintiff became President and General Manager and managed the business until November 22, 1972, when he sold his stock interest to the defendants.

2. Defendant Brown had been a stockholder since the incorporation of the business, and a board member. On June 6, 1972 defendants Kennedy and Cleve became stockholders and board members.

3. During the period June 6, 1972 to November 22, 1972 the plaintiff, as President and General Manager of Onslow Livestock Corporation, ran the business of the corporation without holding any monthly Board of Directors meetings, which had been the procedure prior thereto, and without interference by defendant stockholders.

4. In November 1972, prior to the date of purchase and sale of plaintiff's interest in the corporation, plaintiff had told the defendants Brown and Kennedy that the business was a 'gold mine.'

5. That on or about November 22, 1972 defendants purchased from plaintiff for $60,000.00 the following: (a) 12,500 shares of $1.00 par value common stock of Onslow Livestock Corporation, (b) plus corporation notes with face value of $29,000.00, with accrued interest at 7%, dated at various times, and payable at various dates; for $40,000.00 cash and the $20,000.00 note plaintiff is suing to collect.

6. That at the time the plaintiff sold his interest in the corporation he was the President and General Manager of the corporation and held a fiduciary relationship to the defendants; and owed them the duty to fully inform them of the condition of the corporation and not to conceal any material facts.

7. That the plaintiff knew or, by proper supervision and management of the affairs of the corporation, should have known that during the period that he was President and General Manager of the corporation (from June 6, 1972, to November 22, 1972), the financial condition of the corporation had worsened in that:

(a) the cash and cash on deposit of the corporation had decreased by approximately twenty thousand dollars,

(b) he had borrowed for the corporation an additional $15,000.00 from the corporation's bank,

(c) the liability of the corporation had increased in that:

1. from a sight draft paying basis for purchases from Ralston-Purina Company the corporation had become indebted on an open account basis to Ralston Purina Company in the amount of $10,000.00,

2. the corporation had become overdrawn in its purchases of corn from Lawrence Warehouse Systems and owed the bank $3,910.00 for the overdraft,

3. the demand note due to the bank had become delinquent because the monthly payment of interest had not been made when due;

(d) the working capital of the corporation had become depleted, and there were not enough funds on hand, or to come in hand through the normal course of business, to pay the normal operating expenses of the business.

8. That the plaintiff, at the time of the sale of his interest in the corporation to the defendants, did not inform the defendants of the above material facts and other facts necessary to give the defendants a true picture of the condition of the corporation.

9. Soon after the sale and purchase of the interest of the plaintiff in the corporation the bank called its demand note, further reducing the working capital of the corporation, and resulted in a forced sale of the assets of the corporation.

10. That the defendants relied on the representation of the plaintiff that the business of the corporation was a 'gold mine' and on his representation, by concealment of material facts, that they would be buying stock in a 'going concern' corporation.

11. That the defendants were in fact deceived as to the condition of the corporation and the value of the stock of the corporation.

12. That the defendants were damaged by the false representation and concealment of material facts by the plaintiff by at least the amount that the plaintiff is suing for.

FOURTH DEFENSE: Defendants allege and say that it is through error, oversight, and mutual mistake of fact, that the provisions in the note they signed, copy of which is attached to the complaint, relating to payment of attorney fees, were not stricken through, the same as the printed name of the payee."

Plaintiff's motion for judgment on the pleadings was allowed and judgment rendered that plaintiff have and recover of the defendants, jointly and severally, the sum of $20,000.00,

---

plus interest thereon from 7 March 1973 until paid, plus attorney's fees in the sum of $3,000.00, plus costs. Defendants appealed to the Court of Appeals and that court affirmed the judgment with Baley, J., dissenting. Defendants thereupon appealed to the Supreme Court as of right pursuant to the provisions of G.S. 7A-30(2).

*Warlick, Milsted & Dotson by Alex Warlick, Jr., Attorney for plaintiff appellee.*

*Zennie L. Riggs, attorney for defendant appellants.*

HUSKINS, Justice.

The sole question for decision is whether the Court of Appeals erred in affirming judgment on the pleadings in favor of the plaintiff.

Judgment on the pleadings was granted in this case on the ground that defendants' answer failed to state a valid defense. In reviewing that action by the trial court, the Court of Appeals held, and properly so, that defendants' "first defense," "second defense" and "fourth defense" raise no material issues of fact. We therefore put them aside.

The Court of Appeals treated defendants' "third defense" as a counterclaim pursuant to Rule 8(c) of the Rules of Civil Procedure which provides, *inter alia:* "When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court, on terms, if justice so requires, shall treat the pleading as if there had been a proper designation." We concur in the view that defendants' allegations of fraud are in the nature of a counterclaim even though designated a defense. *See Hutchins v. Davis,* 230 N.C. 67, 52 S.E. 2d 210 (1949). So treated, we must now determine whether defendants have stated a claim of fraud sufficient to overcome plaintiff's motion for judgment on the pleadings.

Motion for judgment on the pleadings is authorized by Rule 12(c) of the North Carolina Rules of Civil Procedure. G.S. 1A-1, Rule 12(c) (1969). The motion operates substantially the same as under the code system before adoption of the new rules of civil procedure. *See Powell v. Powell,* 271 N.C. 420, 156 S.E. 2d 691 (1967); *Reidsville v. Burton,* 269 N.C. 206, 152 S.E. 2d 147 (1967); *Edwards v. Edwards,* 261 N.C. 445, 135 S.E. 2d 18 (1964); 6 Strong, North Carolina Index 2d, Pleadings, § 38 (1968).

[1] North Carolina's Rule 12(c) is identical to its federal counterpart. The rule's function is to dispose of baseless claims or defenses when the formal pleadings reveal their lack of merit. A motion for judgment on the pleadings is the proper procedure when all the material allegations of fact are admitted in the pleadings and only questions of law remain. When the pleadings do not resolve all the factual issues, judgment on the pleadings is generally inappropriate. 5 Wright and Miller, Federal Practice and Procedure, § 1367 (1969).

[2] Judgment on the pleadings is a summary procedure and the judgment is final. *See* James, Civil Procedure § 6.17 (1965). Therefore, each motion under Rule 12(c) must be carefully scrutinized lest the nonmoving party be precluded from a full and fair hearing on the merits. The movant is held to a strict standard and must show that no material issue of facts exists and that he is clearly entitled to judgment. *Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner and Smith, Inc.,* 479 F. 2d 478 (6th Cir. 1973).

[3, 4] The trial court is required to view the facts and permissible inferences in the light most favorable to the nonmoving party. All well pleaded factual allegations in the nonmoving party's pleadings are taken as true and all contravening assertions in the movant's pleadings are taken as false. *Beal v. Missouri Pac. R. R. Corp.,* 312 U.S. 45, 85 L.Ed. 577, 61 S.Ct. 418 (1941) ; *Austad v. United States,* 386 F. 2d 147 (9th Cir. 1967) ; *see* 2A Moore's Federal Practice, § 12.15 (1974) ; 5 Wright and Miller, Federal Practice and Procedure, § 1368 (1969). All allegations in the nonmovant's pleadings, except conclusions of law, legally impossible facts, and matters not admissible in evidence at the trial, are deemed admitted by the movant for purposes of the motion. *Kohen v. H. S. Crocker Company,* 260 F. 2d 790 (5th Cir. 1958) ; *Duhame v. United States,* 119 F. Supp. 192 (Ct. Cl. 1954) ; *Hargis Canneries, Inc. v. United States,* 60 F. Supp. 729 (W.D. Ark. 1945). We consider the case before us in light of these principles.

[5] The "third defense," viewed in the light most favorable to defendants, alleges that on 22 November 1972, for a consideration of $60,000.00, defendants purchased from plaintiff 12,500 shares of common stock of Onslow Livestock Corporation plus corporation notes with a face value of $29,000.00. Defendants paid plaintiff $40,000.00 in cash and executed the $20,000.00 note plaintiff now sues to collect. At the time of the transaction

plaintiff was president and general manager of the Onslow Livestock Corporation and, from 6 June 1972 to 22 November 1972, ran the corporation without holding any meetings of the board of directors and without interference from defendants. Defendant Brown had been a stockholder since incorporation and was a member of the board of directors when the transaction took place. The other defendants became stockholders and board members on 6 June 1972.

The "third defense" further alleges that in the negotiations and discussions preceding the transaction plaintiff falsely represented that the business was a "gold mine" and a "going concern," and that he concealed material financial facts concerning the corporation's liquidity and indebtedness. More specifically, the pleading alleges that plaintiff failed to disclose that during the period from 6 June 1972 to 22 November 1972 the corporation's cash funds decreased by $20,000.00; that plaintiff had borrowed for the corporation an additional $15,000.00; that the corporation's open account with Ralston-Purina Company increased by $10,000.00; that the corporation incurred a liability of $3,910.00 on a bank overdraft; that a corporate demand note had become delinquent because the interest had not been paid when due; and that the corporate working capital was so depleted and corporate income so inadequate that the corporation could not pay its normal operating expenses. The financial deterioration of the corporation resulted in a forced sale of corporate assets soon after the transaction giving rise to the $20,000.00 note sued upon. As a result, defendants were damaged "by at least the amount that the plaintiff is suing for," *i.e.*, $20,000.00 plus interest and attorney's fees.

[6] We hold that the foregoing allegations in defendants' "third defense" raise a material issue of fact and render judgment on the pleadings inappropriate. While fraud has no all-embracing definition and is better left undefined lest crafty men find a way of committing fraud which avoids the definition, the following essential elements of actionable fraud are well established: (1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party. *Johnson v. Owens*, 263 N.C. 754, 140 S.E. 2d 311 (1965); *Early v. Eley*, 243 N.C. 695, 91 S.E. 2d 919 (1956); *Vail v. Vail*, 233 N.C. 109, 63 S.E. 2d 202 (1951); *Insurance Co. v. Guilford County*, 226 N.C. 441,

38 S.E. 2d 519 (1946) ; *Laundry Machinery Co. v. Skinner,* 225 N.C. 285, 34 S.E. 2d 190 (1945) ; *Ward v. Heath,* 222 N.C. 470, 24 S.E. 2d 5 (1943) ; *Pritchard v. Dailey,* 168 N.C. 330, 84 S.E. 392 (1915).

[7, 8]   A subsisting or ascertainable fact, as distinguished from a matter of opinion or representation relating to future prospects, must be misrepresented. *Berwer v. Insurance Co.,* 214 N.C. 554, 200 S.E. 1 (1938) ; *Cash Register Co. v. Townsend,* 137 N.C. 652, 50 S.E. 306 (1905). And generally, the misrepresentation must be definite and specific, *New Bern v. White,* 251 N.C. 65, 110 S.E. 2d 446 (1959), but the specificity required depends upon the tendency of the statements to deceive under the circumstances. "A vague statement that a property or business is 'profitable' or 'a money-maker' may sometimes be treated as one of fact, as where the speaker had a peculiar knowledge of the facts and knew that the property or business had lost money for several years. But where the representee knows that the representer does not have knowledge of the facts, so that a statement that a business is 'profitable' is obviously a guess or an opinion, it does not constitute actionable fraud." Annotation, False Representations as to Income, Profits, or Productivity of Property as Fraud, 27 A.L.R. 2d 14 (1953). Here, according to defendants' allegations, plaintiff as president of the corporation had peculiar knowledge of the facts and knew that the business had lost money in recent months. In our judgment the representations alleged in defendants' "third defense" present a jury question as to whether plaintiff's positive representations that the corporation was a "gold mine" and a "going concern" were intended and received as mere expressions of opinion or as statements of a material fact. *Machine Co. v. Feezer,* 152 N.C. 516, 67 S.E. 1004 (1910) ; 37 C.J.S., Fraud, § 124 (1943).

[9]   It is a permissible inference that plaintiff knew of the worsening condition of the corporation while defendants did not know. When plaintiff undertook to describe the business as a "gold mine" and a "going concern" he incurred a concomitant duty to make a full disclosure of any extenuating financial circumstances which counteracted his positive assertions concerning the condition of the corporation. The rule is that even though a vendor may have no duty to speak under the circumstances, nevertheless if he does assume to speak he must make a full and fair disclosure as to the matters he discusses. *Low v. Wheeler,* 207 Cal. App. 2d 477, 24 Cal. Rptr. 538 (1962) ; *Franchey v.*

*Hannes,* 152 Conn. 372, 207 A. 2d 268 (1965) ; *Vokes v. Arthur Murray, Inc.,* 212 So. 2d 906, 28 A.L.R. 3d 1405 (Fla. App. 1968; *Shepherd v. Woodson,* 328 S.W. 2d 1 (Mo. 1959) ; *State ex rel. Nebraska State Bar Association v. Richards,* 165 Neb. 80, 84 N.W. 2d 136 (1957) ; *Krause v. Eugene Dodge, Inc.,* 265 Ore. 487, 509 P. 2d 1199 (1973) ; 37 Am. Jur. 2d, Fraud and Deceit, § 146 (1968) ; *cf. Wicker v. Worthy,* 51 N.C. 500 (1859).

[10]    Moreover, it is settled law in this jurisdiction that when the circumstances make it the duty of the seller to apprise the buyer of defects in the subject matter of the sale known to the seller but not to the buyer, suppression of the defects constitutes fraud. *Setzer v. Insurance Co.,* 257 N.C. 396, 126 S.E. 2d 135 (1962) ; *Brooks v. Construction Co.,* 253 N.C. 214, 116 S.E. 2d 454 (1960) ; *Manufacturing Co. v. Taylor,* 230 N.C. 680, 55 S.E. 2d 311 (1949) ; *Isler v. Brown,* 196 N.C. 685, 146 S.E. 803 (1929).

For the reasons stated, we hold that defendants' "third defense" states a counterclaim under Rules 8 (a) and 9 (b) for alleged actionable fraud which is sufficient to repel plaintiff's motion for judgment on the pleadings. Accordingly, the decision of the Court of Appeals is reversed and the cause is remanded to that Court for further remand to the Superior Court of Onslow County for proceedings consistent with this opinion.

Reversed and remanded.

Chief Justice BOBBITT not sitting.