EDWARD K. ISBEY, JR., PLAINTIFF v. COOPER COMPANIES, INC., FORMERLY COOPERVISION, INC., DEFENDANT

No. 9028SC1152

(Filed 20 August 1991)

**Fraud § 12.1 (NCI3d) — surgical pack design — marketing firm's misrepresentation as to interest — summary judgment for defendant improper**

> In an action for fraud where plaintiff alleged that defendant falsely represented to plaintiff that defendant was interested in marketing plaintiff's design for an improved custom surgical kit, that plaintiff reasonably relied on defendant's misrepresentations and delayed marketing his design with other marketing companies to his detriment, and that during this delay other companies marketed similar designs thus diminishing plaintiff's potential share of the market, the trial court erred in entering summary judgment for defendant since plaintiff's forecast of evidence showed that defendant engaged in a course of seductive misrepresentation as to its own interest in the custom surgical pack business and as to plaintiff's custom surgical kit design, and the questions of deception and whether plaintiff reasonably relied on defendant's representations to his damage were for determination at trial.

**Am Jur 2d, Fraud and Deceit §§ 68, 69, 233.**

APPEAL by plaintiff from judgment entered 14 August 1990 in BUNCOMBE County Superior Court by *Judge Robert D. Lewis* granting defendant's motion for summary judgment. Heard in the Court of Appeals 15 May 1991.

On 7 November 1989 plaintiff filed this action against CooperVision, Inc. [hereinafter "Cooper"] alleging breach of a confidential disclosure agreement, unfair and deceptive trade practices and fraud. On 20 February 1990 Cooper filed a motion for summary judgment. Following a hearing, the trial court granted Cooper's motion for summary judgment as to all three actions on 14 August 1990. Plaintiff appeals solely as to his cause of action for common law fraud.

*Morris, Bell & Morris, by William C. Morris, Jr., for plaintiff-appellant.*

*Roberts Stevens and Cogburn, P.A., by Isaac N. Northup, Jr., for defendant-appellee.*

**ISBEY v. COOPER COMPANIES, INC.**

[103 N.C. App. 774 (1991)]

WELLS, Judge.

Plaintiff assigns error to the trial court's granting defendant's motion for summary judgment on plaintiff's common law fraud cause of action. Plaintiff contends that defendant falsely represented to plaintiff that defendant was interested in marketing plaintiff's design for an improved custom surgical kit. Plaintiff further contends that he reasonably relied on defendant's misrepresentations and delayed marketing his design with other marketing companies to his detriment. During this delay, other companies marketed similar designs thus diminishing plaintiff's potential share of the market.

It is well stated that summary judgment is properly granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c). A movant may show that he is entitled to summary judgment as a matter of law by presenting a forecast of evidence that shows an essential element of the opposing party's claim is nonexistent or that the opposing party cannot produce evidence to support an essential element of his or her claim. *Zimmerman v. Hogg & Allen*, 286 N.C. 24, 209 S.E.2d 795 (1974). If the moving party has met this initial burden, the nonmoving party may overcome this burden by a forecast of evidence demonstrating that he or she will be able to make out a *prima facie* case at trial. *See Johnson v. Beverly Hanks & Assoc.*, 328 N.C. 202, 400 S.E.2d 38 (1991).

In ruling on a motion for summary judgment, the court must consider the evidence in the light most favorable to the non-movant, *Walker v. Westinghouse Electric Corp.*, 77 N.C. App. 253, 335 S.E.2d 79 (1985), *disc. rev. denied*, 315 N.C. 597, 341 S.E.2d 39 (1986), and give the non-movant all favorable inferences which may reasonably be drawn from the evidence. *Whitley v. Cubberly*, 24 N.C. App. 204, 210 S.E.2d 289 (1974). The moving party's "papers are carefully scrutinized and all inferences are resolved against him." *Kidd v. Early*, 289 N.C. 343, 222 S.E.2d 392 (1976).

In discussing the elements constituting common law fraud our Supreme Court has stated:

While fraud has no all embracing definition and is better left undefined lest crafty men find a way of committing fraud which avoids the definition, the following essential elements of actionable fraud are well established: (1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party.

*Ragsdale v. Kennedy*, 286 N.C. 130, 209 S.E.2d 494 (1974); *Johnson, supra.* Although summary judgment may be proper when absence of genuine issue is clearly established, summary judgment is generally improper in an action for fraud. *Bank v. Belk*, 41 N.C. App. 328, 255 S.E.2d 430, *cert. denied*, 298 N.C. 293, 259 S.E.2d 299 (1979).

The forecast of evidence before the trial court tends to show the following facts and circumstances. In the late 1970's many companies had developed and marketed custom surgical packs which included surgical and post-operative items relevant and necessary to a particular patient's surgical needs. These custom surgical packs oftentimes included sterilized equipment needed by surgeons for various types of surgery as well as other post-operative supplies for both the surgeon and patient. By 1982, ten major companies were manufacturing and marketing custom packs for eye surgery. In 1981, Cooper had begun development of a custom pack for eye surgery known as "SuperPak," which combined Cooper's own previously available and successful standardized equipment pack, "Unipak," in the same package with other disposable surgical products. Following an unsuccessful marketing attempt, Cooper discontinued its customized "SuperPak" by late 1983. Although marketing its customized surgical pack was unsuccessful, Cooper continued to market its standardized surgical packs with success.

On 25 October 1983, plaintiff, a practicing ophthalmologist, filed a patent application with the United States Patent and Trademark Office for an improved custom surgical kit containing disposable surgical trays which house various surgical and post-operative supplies. During the fall of 1983, Dr. Isbey met with Mike Shell, a Cooper sales representative, regarding matters related to Dr. Isbey's patent application. Mike Shell arranged for Dr. Isbey to meet with Robert Morris, Cooper's marketing manager.

On 31 October 1983 plaintiff met Morris at an American Academy of Ophthalmology Convention to discuss marketing plaintiff's custom surgical kit. During this meeting, the two signed a

ISBEY v. COOPER COMPANIES, INC.

[103 N.C. App. 774 (1991)]

confidential disclosure agreement that referenced plaintiff's improved surgical kit. Plaintiff then discussed his idea for an improved custom surgical kit with Morris and either showed or gave to Morris a copy of his patent application. Plaintiff testified through deposition that Morris was very enthusiastic about his idea. Mike Shell testified through affidavit that during this meeting plaintiff made a written list of reasons why and how plaintiff's custom surgical kit would benefit Cooper. Shell further testified that Morris later stated that Cooper did not want to pay plaintiff royalties, but was interested in plaintiff's ideas and would be willing to pay plaintiff for the use of them. John Buster, Cooper's Vice President and Manager of Medical Supplies, testified through affidavit that during the following month, November 1983, Cooper began searching for a manufacturer of customized surgical packs and actively considered acquiring Sterile Design, Inc.

Following their discussion, plaintiff had no contact with Morris until plaintiff received a letter from Morris dated 27 February 1984, stating the following:

We recently market tested your pak concept. The results were very promising. Your concept is extremely applicable within the context of a custom surgery pak. Unfortunately, CooperVision, at this time, is not ready to enter the custom pak business. However, we are very interested in your design and would appreciate hearing from you as soon as you receive patent status from your attorney. Please do not hesitate to call me on this matter. Hope to see you soon.

Despite Morris' letter stating that Cooper was not ready to enter the custom pack business, John Buster further testified that on or about March 1984, Cooper began negotiations with Southwest Medical Packaging, Inc. [hereinafter "Southwest"], an established manufacturer of custom surgical packs. Plaintiff testified through deposition that a few months following the receipt of Morris' letter, during the summer of 1984, Mike Shell and Cooper's regional director from Kentucky, Bo Bandura, visited plaintiff at plaintiff's office. Plaintiff stated that the three had lunch together, during which time plaintiff fully discussed his custom surgical kit idea with Bandura.

On 7 January 1985 Cooper and Southwest signed an exclusive distribution agreement, whereby Southwest agreed to supply Cooper with ophthalmologic packs and gave Cooper exclusive rights to

distribute, promote and sell these packs. In a letter dated 7 March 1985 Janet K. Fencl, Cooper's marketing manager of medical supplies, rejected plaintiff's design. Fencl testified through affidavit that Dr. Isbey's concept was not economically sound or feasible. In her deposition responding to questions concerning defendant's delay in responding to plaintiff regarding plaintiff's concept, Fencl stated, that plaintiff's concept was not unique and that Cooper was never seriously interested in it. On 17 May 1985, Cooper acquired ownership of Southwest and Cooper once again entered the market for customized surgical packs.

Defendant contends that plaintiff's claim is defective because defendant made no misrepresentations to plaintiff regarding its interest in plaintiff's custom surgical kit or its desire or ability to reenter the custom pack market. We disagree.

This forecast fairly exudes deception, which is at the heart of every fraud. Viewed in the light most favorable to plaintiff, the forecast shows that defendant engaged in a course of seductive misrepresentation as to its own interest in the custom surgical pack business and as to plaintiff's custom surgical kit design. The questions of deception and whether plaintiff reasonably relied on Cooper's representations to his damage are for determination at trial.

Plaintiff having established a *prima facie* case, the granting of summary judgment on plaintiff's fraud claim was in error and must be reversed.

Reversed.

Judges ARNOLD and PHILLIPS concur.