MAMIE FRANCES LONG, Plaintiff v. JAMES H. LONG, EXECUTOR OF THE ESTATE OF R. W. LONG, DECEASED, AND E. L. "TOM" ELLROD, INDIVIDUALLY, and as OFFICER and DIRECTOR OF LONG TRAILER COMPANY, INC., and LONG TRAILER COMPANY, INC., and NORTH CAROLINA NATIONAL BANK, N/K/A, "NATIONSBANK", Defendants

No. COA94-851

(Filed 18 July 1995)

**1. Partnership § 59 (NCI4th)— buy-sell agreement—stipulated price of stock—negotiated settlement—no right of partner's wife to declaratory judgment**

The trial court did not err in failing to declare plaintiff's rights under a deed of separation, an escrow agreement, and a buy-sell agreement between her husband and his partner, since plaintiff had no rights under the documents at issue which would allow her to challenge the stipulated price of the stock which was to fund a trust for her benefit and later became subject to a partnership buy-sell agreement; the deed of separation required that a

**LONG v. LONG**

[119 N.C. App. 500 (1995)]

trust for plaintiff's benefit be funded out of her husband's estate but did not specify any particular property that was to be used, provided that the parties could substitute in escrow other property or cash in place of the husband's partnership stock, and expressly stated that the stock may become the subject of a buy-sell agreement between the partners; plaintiff would suffer no harm whatsoever by the current valuation of the stock; and the executor, who had the sole power to settle claims in favor of or against the estate, sought and received judicial approval of his handling of the matter.

**Am Jur 2d, Partnership §§ 1158 et seq.**

## 2. Fraud, Deceit, and Misrepresentation § 25 (NCI4th)— insufficiency of allegations and proof

The trial court properly entered summary judgment for defendants on plaintiff's claims for fraud and misrepresentation because those claims were not supported by argument, plaintiff's complaint contained no mention of any fraudulent statements made by her husband's partner to her, and plaintiff made no showing that statements were made to deceive or in fact deceived her.

**Am Jur 2d, Fraud and Deceit §§ 423 et seq.**

## 3. Appeal and Error § 510 (NCI4th)— frivolous appeal—sanctions imposed

Where a trust benefitting plaintiff was funded by partnership stock which was bought by the remaining partner when plaintiff's husband died, and plaintiff brought an action for declaratory judgment and fraud because she thought the price of the stock was set too low, the Court of Appeals imposes sanctions upon plaintiff and her attorney because the appeal is frivolous and neither well grounded in fact nor warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law. N.C.R. App. P. 34.

**Am Jur 2d, Appellate Review §§ 946 et seq.**

Appeal by plaintiff from judgment entered 22 April 1994, judgment entered 2 May 1994, and order entered 2 May 1994 by Judge J. Richard Parker in Edgecombe County Superior Court. Heard in the Court of Appeals 8 May 1995.

*Jesse Matthewson Baker for plaintiff-appellant.*

*Bridgers, Horton, Rountree & Boyette, by Charles S. Rountree, for defendant-appellee James H. Long.*

*Godwin and Spivey, by W. Michael Spivey, for defendants-appellees E.L. Ellrod and Long Trailer Company, Inc.*

LEWIS, Judge.

Plaintiff commenced this action for declaratory relief, breach of fiduciary duty, fraud and misrepresentation, intentional infliction of emotional distress, intentional interference with the contractual rights of third parties, negligent interference with the contractual rights of third parties, conversion, civil conspiracy, and relief under the cy-pres doctrine. The dispute concerns the value of a stock certificate held by NationsBank as escrow agent. Summary judgment was granted for defendants James H. Long, E.L. Ellrod, and Long Trailer Company, Inc., and defendant NationsBank was dismissed from the action and ordered to deliver the stock certificate to James H. Long. From the judgments and the order, plaintiff appeals.

Plaintiff and R.W. Long (hereinafter "Long" or "R.W. Long") separated in 1984 after many years of marriage. They entered into a deed of separation on 25 May 1984. Among other things, the deed of separation provided that Long would pay plaintiff alimony in the amount of $2,000 per month for the remainder of Long's life, such amount to be reduced by any Social Security benefits plaintiff may receive. It further provided that in his will, Long would devise to a corporate fiduciary in trust for the benefit of plaintiff real and/or personal property equal in value to a one-third interest in his estate. The trust principal was to be increased, if necessary, to an amount sufficient to pay plaintiff $2,000 per month, less Social Security received by plaintiff, for the remainder of plaintiff's life. We note that Long's will clarifies that it is the income from the trust that must be sufficient to pay plaintiff each month.

One of Long's largest assets was his stock in defendant Long Trailer Company, Inc. (hereinafter "the company"). Long and defendant E.L. Ellrod were the only shareholders of the company, and each owned sixty-two and one-half shares of stock. Apparently to guarantee Long's performance under the deed of separation, Long, Ellrod, plaintiff, and the respective attorneys for Long and plaintiff, entered into an escrow agreement regarding Long's sixty-two and one-half

shares of stock. The agreement, dated 26 July 1984, provided that defendant NCNB (now known as NationsBank) would hold Long's stock in escrow until the parties jointly requested that the stock be surrendered to them, or "either" of them, or until ordered to make a disposition of the stock by the court, or until the death of Long, whichever occurred first. The agreement further stated that Ellrod was a party because he was the only other stockholder and because the stock was then, or may become, the subject of a buy-sell agreement between Long and Ellrod. In addition, the agreement provided that the parties could agree to substitute other property or cash as escrow to guarantee the faithful performance by Long of his obligations under the deed of separation. Finally, the escrow agreement provided that Long would pay the escrow agent an annual fee and, in the event of a court action or other dispute involving the agent, additional fees.

At the time the escrow agreement was signed, Long and Ellrod were parties to a buy-sell agreement, dated 12 January 1983, regarding their stock in the company. The agreement provided that upon the death of a shareholder, the personal representatives of the deceased must sell all of the shares of the deceased to the company. The agreement stipulated that the price of the shares would be $5,600 per share, for a total price of $350,000 for all sixty-two and one-half shares. It also provided that at the close of each fiscal year, Long and Ellrod had to review the stipulated price. They could then stipulate that the price had not changed, or they could stipulate to a new price. If Long and Ellrod failed to either stipulate that the price had not changed or to stipulate to a new price, the price for each share was to be the last stipulated price plus or minus the net earnings or losses per share since the date of the last stipulated price, less dividends paid or payable thereon.

On 30 January 1986, Long and Ellrod executed another buy-sell agreement, which increased the total price for a shareholder's stock to $450,000. The language regarding the adjustment of the price based on the net earnings or losses per share was removed. On 12 January 1988, Long and Ellrod executed an "amendment to modify purchase price," whereby the price was increased to $600,000.

Long died on 6 November 1989. His will established the trust for plaintiff as required by the deed of separation. At the time of his death, the stipulated purchase price for his shares was $600,000. After Long's death, the company and Ellrod sued Long's estate claiming the

company's right to purchase Long's stock for $600,000 and claiming they were owed on loans made to Long. Defendant James Long, the executor of R.W. Long's estate, eventually entered into a settlement agreement with Ellrod and the company. In exchange for $565,000, the estate would deliver the stock, and the lawsuit would be dismissed. James Long petitioned the superior court for a ruling that he had acted reasonably in settling the case. The petition was served upon all beneficiaries and creditors of the estate, including plaintiff. The superior court approved the settlement, and plaintiff appealed to this Court, which affirmed the ruling in an unpublished opinion. *See In re Long*, 117 N.C. App. 305, 451 S.E.2d 667 (1994).

Plaintiff filed the present action seeking: (1) a declaration of her rights under the deed of separation, the escrow agreement, and the 1983 buy-sell agreement; (2) damages from Ellrod and the estate; and (3) construction of the three documents at issue under the cy-pres doctrine so as to give effect to the intentions of the parties to the documents. At the heart of plaintiff's action is her contention that had the purchase price of the stock been adjusted upward based on net earnings, as the 1983 buy-sell agreement would have required, the purchase price for Long's sixty-two and one-half shares would have been $1,429,762 at the date of Long's death, thus considerably increasing the size of Long's estate. The trial court granted summary judgment for defendants James Long, E.L. Ellrod, and the company. The court ordered that NationsBank be dismissed from the action and that NationsBank deliver the stock certificate to the executor, James Long.

[1] Plaintiff's first contention on appeal is that the trial court erred in failing to address her claim for declaratory relief. In its judgments, the court grants summary judgment for James Long, E.L. Ellrod, and the company and dismisses plaintiff's actions against them. However, the court does not declare the rights of plaintiff under the deed of separation, the escrow agreement, and the 1983 buy-sell agreement. While we agree that the trial court did not declare plaintiff's rights under the documents, we presume from its grant of summary judgment for defendants that it concluded, as do we, that plaintiff had no rights under the documents at issue which would allow her to challenge the stipulated price of the stock.

Plaintiff apparently contends that because of the deed of separation and the escrow agreement, she had a "security interest" in the stock and therefore became the equivalent of a minority shareholder

in the company. She argues that because she was a minority share-holder, Ellrod had fiduciary duties to her which would prohibit his deflating the value of the stock. Plaintiff concedes that she can find no authority to support her contention, and neither can we. We find plaintiff's contention to be entirely without merit.

The deed of separation makes no mention of Long's stock. It requires that a trust be funded out of Long's estate but does not specify any particular property that is to be used. Whatever rights plaintiff may have had based on the escrow agreement, she in no way became the equivalent of a shareholder in the company. The escrow agreement was intended to ensure that the stock remained as an asset of Long until his death or until "the parties" to the agreement, presumably plaintiff, Long, and Ellrod, decided otherwise. In addition, the agreement provided that the parties could substitute in escrow other property or cash in place of the stock. Further, the agreement expressly stated that the stock may become the subject of a buy-sell agreement between Ellrod and Long. Clearly, plaintiff did not assume the mantle of shareholder in the company by virtue of this escrow agreement.

Furthermore, plaintiff will suffer no harm whatsoever by the current valuation of the stock. Plaintiff's right under Long's will was to have a trust established which could pay plaintiff from its income $2,000 per month, less Social Security benefits received by plaintiff. There is no question but that Long's estate is sufficient to fund the trust. Thus, as plaintiff concedes, it is not she who will receive less because of the stock's valuation. Rather, it is the only child of the marriage, her son, who is to receive the corpus of the trust upon plaintiff's death. Plaintiff's son is not a party to this action.

Finally, we point out that under the will, the executor, James Long, had the sole power to settle claims in favor of or against the estate. The will granted the executor all the powers found in N.C.G.S. § 32-27 (1991). Section 32-27(23) provides that the executor has the power to "compromise, adjust, arbitrate, sue on or defend, abandon, or otherwise deal with and settle claims" as the executor shall deem advisable, and in the absence of fraud, bad faith or gross negligence by the executor, the executor's decision shall be conclusive between the beneficiaries of the estate and the executor. Thus, by this action, plaintiff seeks to usurp the powers of the executor. As noted above, the executor sought and received judicial approval of his handling of the matter. In sum, we conclude that plaintiff had no right under the

deed of separation, the escrow agreement, or the 1983 buy-sell agreement to challenge the purchase price of the stock.

Plaintiff's next contention is that the trial court erred in granting summary judgment for defendants on her claims for intentional/ negligent interference with the contractual rights of third parties. Plaintiff contends that she had contractual rights under the documents at issue, which rights were interfered with by Ellrod. As we have stated, plaintiff had no right under these documents to challenge the purchase price of the stock. Thus, plaintiff's contention that her contractual rights were interfered with is without merit.

[2] Next, plaintiff argues that the court erred in granting summary judgment on her claims for fraud/misrepresentation. The elements of fraud are: "(1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Ragsdale v. Kennedy*, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974). Plaintiff's argument in her brief consists almost entirely of quotes from various authorities and contains no mention of any fraudulent statements made by Ellrod to plaintiff. The extent of her brief's application of the law of fraud to the facts of this case is as follows: "Ellrod was a corporate fiduciary who owed a duty to [plaintiff]. We think he violated that duty to [plaintiff]." Therefore, we must look to the complaint to determine on what misrepresentations plaintiff alleges she relied. The complaint alleges that several of the documents involved in the case contain false representations by Ellrod. First, plaintiff quotes most of the escrow agreement, alleging that the quoted material represents false statements by Ellrod. We note that one of the provisions in that agreement was never stated by Ellrod. Plaintiff quotes paragraph two: "R.W. Long agrees to indemnify and save harmless the said NCNB National Bank of North Carolina from all loss, cost and expense in connection with this escrow." Ellrod had no part in that provision. The only portions of the agreement which are statements of Ellrod are undeniably true. They are set out earlier in this opinion and need not be restated here.

Plaintiff further cites the 1986 buy-sell agreement and the 1988 purchase price amendment and contends that the statement in each as to the current price of the stock amounts to a false representation by Ellrod. Even if we assume that such statements were false, plaintiff has not shown that the statements were made with the intent to deceive her, that they did deceive her, or that she in any way relied on

the statements. Plaintiff also cites a letter dated 21 November 1989 from Ellrod and the company to James Long which informed the executor that the company would perform its obligation to purchase R.W. Long's stock. Again, this is a truthful statement. The trial court properly granted summary judgment for defendants on plaintiff's claims for fraud/misrepresentation.

Although plaintiff assigns error to the granting of summary judgment on all of her claims, there is no discussion in plaintiff's brief of her claims for intentional infliction of emotional distress, conversion, civil conspiracy, or relief under the cy-pres doctrine. Accordingly, plaintiff's assignments of error with respect to those portions of the judgments are deemed abandoned. *Trull v. Central Carolina Bank & Trust Co.*, 117 N.C. App. 220, 222, 450 S.E.2d 542, 544 (1994), *disc. review denied*, 339 N.C. 621, 454 S.E.2d 267 (1995); N.C.R. App. P. 28(b)(5) (1995).

**[3]** Finally, defendant James Long, the executor of R.W. Long's estate, has requested that this Court impose sanctions against plaintiff and award damages to the estate for plaintiff's frivolous appeal. Rule 34 of the Rules of Appellate Procedure provides in pertinent part that this Court may, on motion of a party or on its own motion, impose a sanction against a party or an attorney or both if the Court determines that an appeal is frivolous because it is not well grounded in fact and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law. N.C.R. App. P. 34(a)(1) (1995). We agree that this appeal is frivolous under the above definition. It is neither well grounded in fact nor warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law. We therefore order that plaintiff and her attorney pay the costs and reasonable expenses, including reasonable attorney fees, (hereinafter "costs and expenses") incurred by defendants James Long, as executor of the estate of R.W. Long, E.L. Ellrod, and Long Trailer Company, Inc. because of this appeal. *See* N.C.R. App. P. 34(b)(2). Pursuant to Rule 34(c), we remand the case to the trial court for a hearing to determine defendants' costs and expenses. To be included in those amounts are the defendants' costs and expenses associated with the hearing on sanctions. We deny the executor's request for damages.

For the reasons stated, the judgments and order of the trial court are affirmed and the case is remanded for a hearing on sanctions.

Affirmed and remanded for hearing on sanctions.

Chief Judge ARNOLD and Judge McGEE concur.