UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

DIANNE D. DECKER, Executor of the
Estate of Ronald L. Decker,
            *Plaintiff-Appellant,*

                v.

UNUM PROVIDENT CORPORATION;
PROVIDENT LIFE & ACCIDENT
INSURANCE COMPANY,
            *Defendants-Appellees.*

No. 02-2151

Appeal from the United States District Court
for the Middle District of North Carolina, at Durham.
James A. Beaty, Jr., District Judge.
(CA-01-106)

Argued: October 30, 2003

Decided: January 28, 2004

Before WIDENER, MOTZ and DUNCAN, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** Bertram Ervin Brown, II, HANDLER & BROWN,
P.L.L.C., Winston-Salem, North Carolina, for Appellant. Jack
Michael Strauch, WOMBLE, CARLYLE, SANDRIDGE & RICE,
P.L.L.C., Winston-Salem, North Carolina, for Appellees. **ON
BRIEF:** William F. Womble, Jr., Mark Davis, WOMBLE, CAR-

LYLE, SANDRIDGE & RICE, P.L.L.C., Winston-Salem, North Carolina, for Appellees.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

**OPINION**

PER CURIAM:

Plaintiff-appellant Dianne D. Decker, as executor of the estate of Ronald L. Decker,[1] appeals the July 19, 2002 judgment of the district court, entered after a jury trial, in favor of defendants-appellees UNUM Provident Corporation and Provident Life & Accident Insurance Company ("Provident"). For the reasons that follow, we affirm.

I.

Ronald Decker was president of Edman Electric Company ("Edman") and Edman Security & Alarm Company, Inc. ("Edman Alarm"). In the mid-1990s, Mr. Decker's companies began to collapse financially, leading Edman to file for protection under the bankruptcy laws in July of 1997.

In an effort to expand Edman Alarm's business opportunities, Mr. Decker applied to the North Carolina Alarm Systems Licensing Board (the "Board") for a license to install alarm systems. On October 31, 1996, and again on November 14, Mr. Decker listed himself as the qualifying agent in application materials sent to the Board. Under North Carolina law, a qualifying agent is an individual that actively works in a managerial capacity for the company that will conduct

---

[1]After judgment was entered in the district court, but prior to filing the notice of appeal, Ronald Decker died. Dianne Decker, executor of decedent's estate, filed a motion to be substituted as plaintiff-appellant. We now grant that motion.

business under the license. *See* N.C. Gen. Stat. § 74D-2(c)(2). Mr. Decker also stated that he was exercising "direct control and supervision of the employees registered under" Edman Alarm's license.

On January 6, 1997, Board investigator Janice B. Moser informed Mr. Decker that he was being investigated for engaging in the alarm systems business without a license. Mr. Decker appeared before the Board on January 17 and reiterated that he intended to serve as the qualifying agent for Edman Alarm. His application was denied on January 21, 1997.

As Mr. Decker's businesses failed, he apparently suffered worsening medical problems. At some point during 1996, Mr. Decker applied for and was awarded Social Security disability benefits. The Social Security Administration ("SSA") benefit letter stated that it considered Mr. Decker disabled as of October 26, 1996, but did not state the medical basis for that determination.

Mr. Decker had purchased a disability insurance policy from Provident in 1988. The same day that the Board informed him that he was under investigation, Mr. Decker contacted Provident and informed it that he believed he was disabled. He also contacted his primary physician to request a referral to a psychiatrist. Mr. Decker began seeing a psychiatrist, Dr. Stephen Kirley, on January 13, 1997.

On January 23, 1997 — two days after the Board denied his license application — he told Provident that he was totally disabled and submitted a claim for benefits.[2] Mr. Decker claimed to be disabled due to Crohn's disease, from which he had suffered for over 30 years, and post-traumatic stress disorder ("PTSD") stemming from a shooting incident on December 22, 1996.[3] He stated that his period of disability began October 21, 1996.

---

[2]Under Mr. Decker's policy, "total disability" meant that, due to injury or sickness, Mr. Decker was "not able to perform the substantial and material duties of [his] occupation" and was "receiving care by a Physician which [was] appropriate for the condition causing the disability."

[3]According to Mr. Decker, burglars shot him while he was guarding Edman's office at night. This overnight vigil was inspired by an alleged theft that had occurred several nights before. Mr. Decker's physical injuries were minor, but on January 2, 1997, his primary physician recommended that Mr. Decker see a psychiatrist.

Dr. Kirley provided documentation to Appellee confirming his diagnosis and medical opinion that Mr. Decker was unable to work. Provident's independent medical examiners confirmed the diagnosis of PTSD, and in April 1997, Provident began paying disability benefits of $12,000 per month under a reservation of rights. Provident informed Mr. Decker that it considered his period of disability to have begun on January 13, 1997, basing the determination of total disability solely on Mr. Decker's PTSD.

In March of 2000, Provident's medical staff determined that Mr. Decker's symptoms did not prevent him from performing his usual duties and benefits were terminated.

Mr. Decker sued Appellees for breach of his disability insurance contract after Provident terminated his benefits. Provident counterclaimed for fraud. The jury returned a verdict for Provident on both claims[4] and awarded $36,000 compensatory damages and $3,600 punitive damages. On appeal, Appellant argues that the district court erred (1) in excluding evidence of the Social Security Administration's determination that Mr. Decker was disabled; (2) in denying plaintiff's motion for a directed verdict on defendants' counterclaim of fraud; and (3) in denying plaintiff's motion for judgment as a matter of law, or, in the alternative, for a new trial.

## II.

Appellant first argues that the district court erred in excluding the SSA's determination that Mr. Decker was disabled as of October 26, 1996. "Decisions regarding the admission or exclusion of evidence are committed to the sound discretion of the district court and will not be reversed absent an abuse of that discretion." *United States v. Lancaster*, 96 F.3d 734, 744 (4th Cir. 1996). We conclude that the district

---

[4]Mr. Decker filed other claims, but only his claim against Provident for breach of contract was submitted to the jury. Mr. Decker's other claims against Provident, and all of his claims against UNUM Provident Corporation, were dismissed. Provident also filed a counterclaim for negligent misrepresentation, but the district court directed a verdict on this claim in Mr. Decker's favor at the close of evidence. None of the district court's rulings regarding these other claims are before this Court.

court did not err in this regard because the award was based on a different factual record and in a different legal context than those that were before the jury.

The SSA determined that Mr. Decker was disabled as of October 26, 1996, almost two months prior to the shooting incident that created Mr. Decker's PTSD. At trial, Mr. Decker did not make an offer of proof showing the basis of the SSA's determination. However, it appears unlikely that the SSA's determination could have been based on PTSD since the accident on which that claim was predicated had not occurred. Further, the district court appropriately concluded that admitting the SSA determination could have been more confusing than probative for the jury in its consideration of the underlying breach of contract claim. Accordingly, we find that the district court did not abuse its discretion by excluding evidence of the SSA award.

## III.

Appellant next argues that the district court erred in denying plaintiff's motion for a directed verdict on Provident's counterclaim of fraud. To establish a claim of fraud in North Carolina, a party must prove that there was "(1) [a] false representation or concealment of material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, and (5) [which] result[s] in damage to the injured party." *Harrold v. Dowd*, 561 S.E.2d 914, 918 (N.C. Ct. App. 2002) (citing *Ragsdale v. Kennedy*, 209 S.E.2d 494, 500 (N.C. 1974)). Appellant claims that Provident failed to prove that Mr. Decker falsely represented or concealed a material fact.

We review the denial of a directed verdict *de novo*. *Randall v. Prince George's County*, 302 F.3d 188 (4th Cir. 2002). "The standard of review regarding a directed verdict is whether the evidence is such, without weighing the credibility of the witnesses, that there is only one conclusion that reasonable jurors could have reached." *Keller v. Prince George's County*, 827 F.2d 952, 955 (4th Cir. 1987). "[A]n issue can only be submitted to a jury when it is supported by substantial evidence that shows a probability and not mere possibility of proof." *E. Auto Distribs., Inc. v. Peugeot Motors*, 795 F.2d 329, 335 (4th Cir. 1986).

Appellant falls far short of demonstrating that reasonable jurors could only find in Mr. Decker's favor. Provident introduced evidence tending to show that, throughout the last quarter of 1996 and into 1997, Mr. Decker was fulfilling the functions of his positions at Edman and Edman Alarm to the same extent as he had been prior to October 21, 1996 — his claimed date of total disability. Most notably, the evidence showed that at the same time Mr. Decker was making sworn representations to Provident regarding his inability to work, he was attempting to obtain his alarm license and representing that he was, and would be, undertaking the same types of managerial and oversight responsibilities he professed to Provident his inability to perform. Provident also elicited expert testimony — both from its own experts and from Mr. Decker's — suggesting that Mr. Decker did not in fact suffer from PTSD, but rather had presented exaggerated or false symptoms to his treating psychiatrist. From this a reasonable jury could conclude that Mr. Decker falsely stated that his period of disability began on October 21, 1996 and/or that he was unable to perform "the substantial and material duties of [his] occupation."

Consequently, we find that there was ample evidence to warrant the submission of Provident's fraud counterclaim to the jury. The district court therefore appropriately denied this portion of plaintiff's motion for a directed verdict.

## IV.

Finally, Appellant claims that the district court erred in denying Mr. Decker's motion for judgment as a matter of law, or, in the alternative, for a new trial. We review the former *de novo*, and the latter for abuse of discretion. *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 638, 645, 650 (4th Cir. 2002).

## A.

Mr. Decker moved for judgment as a matter of law as to both questions submitted to the jury: (1) whether Provident breached the terms of Mr. Decker's disability insurance policy, and (2) whether Mr. Decker committed fraud. However, Mr. Decker failed to move for a directed verdict as to his breach of contract claim at the close of evidence. Consequently, he waived his right to move for judgment as a

matter of law on this issue following the jury's verdict. *Bristol Steel & Iron Works, Inc. v. Bethlehem Steel Corp.*, 41 F.3d 182, 186-87 (4th Cir. 1994). The district court correctly denied the motion on this basis.

The district court was also correct to deny the motion on Provident's fraud counterclaim. As with a motion for directed verdict, we must consider "whether the evidence is such, without weighing the credibility of the witnesses, that there is only one conclusion that reasonable jurors could have reached." *Keller v. Prince George's County*, 827 F.2d 952, 955 (4th Cir. 1987). We affirm the district court's denial of judgment as a matter of law on this issue for substantially the same reasons that we affirm the district court's denial of plaintiff's motion for a directed verdict.

## B.

When ruling on a motion for a new trial, the district court is not constrained to view the evidence in the light most favorable to the non-moving party, and the court may evaluate the credibility of the witnesses. *United States v. Arrington*, 757 F.2d 1484, 1485 (4th Cir. 1985). "The court should grant a new trial only if 1) the verdict is against the clear weight of the evidence, 2) is based on evidence which is false, or 3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Dennis*, 290 F.3d at 650.

Having reviewed the record on appeal and Appellant's arguments, we do not believe the district court abused its discretion in denying Mr. Decker a new trial. Mr. Decker's statements to Dr. Kirley and the Board were inconsistent and self-serving. The district court was within its discretion to weigh the evidence in light of Mr. Decker's lack of credibility, as, apparently, did the jury.

## V.

Accordingly, we affirm the judgment of the district court.

*AFFIRMED*