Schultheis v. Hatteras Capital Inv. Mgmt., LLC, 2014 NCBC 23.

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
14 CVS 469

LEE W. SCHULTHEIS; TRUST ADVISORY )
GROUP, INC; MICHAEL R. PORTNOY and )
MARK R. TONUCCI, Individually and )
Derivatively on Behalf of Hatteras Alternative )
Mutual Funds, LLC, )
                     Plaintiffs )
                     )
                     )
             v. )
                     )
HATTERAS CAPITAL INVESTMENT )
MANAGEMENT, LLC, Individually and in its )
Capacity as Sole Managing Member of )
Hatteras Alternative Mutual Funds, LLC; )
DAVID B. PERKINS, Individually and in his )
Capacity as a Managing Member of Hatteras )
Capital Investment Management LLC; )
ROBERT L. WORTHINGTON, Individually )
and in his Capacity as a Managing Member )
of Hatteras Capital Investment Management )
LLC; HATTERAS INVESTMENT )
PARTNERS LLC; HATTERAS )
INVESTMENT MANAGEMENT LLC and )
HATTERAS CAPITAL INVESTMENT )
PARTNERS, LLC, )
                     Defendants )
                     )
          and )
                     )
HATTERAS ALTERNATIVE MUTUAL )
FUNDS, LLC, )
              Nominal Defendant )

**OPINION AND ORDER
ON MOTION FOR JUDGMENT
ON THE PLEADINGS**

THIS CAUSE, designated a mandatory complex business case by Order of the

Chief Justice of the North Carolina Supreme Court, pursuant to N.C. Gen. Stat. § 7A-

45.4(b) (hereinafter, references to the North Carolina General Statutes will be to "G.S."),

and assigned to the undersigned Chief Special Superior Court Judge for Complex

Business Cases, comes before the court upon Defendants' Motion for Judgment on the Pleadings ("Motion") pursuant to Rule 12(c) of the North Carolina Rules of Civil Procedure ("Rule(s)"); and

THE COURT, after reviewing the Motion, briefs in support of and in opposition to the Motion, arguments of counsel and other appropriate matters of record, CONCLUDES that the Motion should be GRANTED, for the reasons stated herein.

*Satisky & Silverstein, LLP, by Keith A. Satisky, Esq. and Howard P. Satisky, Esq. for Plaintiffs Lee W. Schultheis, Trust Advisory Group, Inc., Michael E. Portnoy and Mark R. Tonucci.*

*Wyrick Robbins Yates & Ponton LLP, by Benjamin N. Thompson, Esq., Lee M. Whitman, Esq. and J. Blakely Kiefer, Esq. and Drinker Biddle & Reath LLP, by Richard E. Coe, Esq., Daniel H. Aiken, Esq. and David J. Woolf, Esq. for Defendants Hatteras Capital Investment Management, LLC, David B. Perkins, Robert L. Worthington, Hatteras Investment Partners LLC, Hatteras Investment Management LLC and Hatteras Capital Investment Management, LLC.*

Jolly, Judge.

## PROCEDURAL HISTORY

[1]     On January 13, 2014, Plaintiffs filed a Complaint against Defendants. Plaintiff's action was designated as civil action number 14 CVS 469 by the Clerk of Superior Court of Wake County.

[2]     In the Complaint, Plaintiffs allege the following eight claims for relief ("Claim(s)"): First Claim for Relief (Breach of Operating Agreement – HCIM); Second Claim for Relief (Breach of Implied Covenant of Good Faith and Fair Dealing – HCIM); Third Claim for Relief (Breach of ESA – HIP); Fourth Claim for Relief (Breach of Fiduciary Duties and Duties of Good Faith and Fair Dealing – HCIM); Fifth Claim for Relief (Breach of Fiduciary Duty and Duty of Good Faith and Fair Dealing – Perkins and

Worthington); Sixth Claim for Relief (Access to Company Information – HAMF); Seventh Claim for Relief (Unjust Enrichment – All Defendants); and Eighth Claim for Relief (Declaratory Judgment).

[3]     On April 17, 2014, Defendants filed the Motion, seeking limited judgment on the pleadings with respect to Plaintiffs' Claims to the extent the Claims are based on Hatteras Capital Investment Management, LLC's ("HCIM") alleged breach of the Third Amended and Restated Limited Liability Company Operating Agreement of Hatteras Alternative Mutual Funds LLC[1] by virtue of HCIM's entrance into an agreement to sell all or substantially all of Hatteras Alternative Mutual Funds LLC's ("HAMF") assets without obtaining Plaintiffs' authorization.

[4]     On May 1, 2014, upon consent of the parties, the court entered an Order to Bifurcate and Partial Case Management Order ("Bifurcation Order"). Pursuant to the Bifurcation Order, the issue of whether HCIM acted improperly in failing to obtain Plaintiffs' approval for the sale of HAMF's assets was severed from the rest of the action and placed on an expedited trial schedule. The Bifurcation Order also expedited the parties' briefing schedule for this Motion as well, and the Motion was set for hearing immediately preceding trial.

[5]     The Motion has been fully briefed and argued and is ripe for determination.

---

[1] *See* Ex. 1 to Answer and Countercl. ("Operating Agreement").

## FACTUAL BACKGROUND

Among other things, the Complaint alleges that:

[6] Plaintiffs are minority, non-managing members of HAMF. Plaintiffs brought this action individually and derivatively on behalf of HAMF.[2] HAMF is a Delaware limited liability company with its principal office located in Wake County, North Carolina. HAMF is registered with the U.S. Securities and Exchange Commission under the Investment Advisers Act of 1940.[3]

[7] Defendant HCIM is the managing member of HAMF. Defendants Perkins and Worthington are the individual managing members of HCIM.[4] Defendant Perkins is the sole managing member of Hatteras Investment Partners, LLC ("HIP").[5] HCIM and HIP are both Delaware limited liability companies with principal locations in Wake County, North Carolina. HIP is "an affiliated entity of" HCIM. Along with several other affiliated entities, HAMF, HCIM and HIP constitute The Hatteras Group, which provides "alternative investment products."[6]

[8] Prior to September 15, 2009, HAMF operated under the name Alternative Investment Partners, LLC. On September 15, 2009, HCIM completed its acquisition of a 55% membership interest in HAMF.[7] As part of this transaction, HCIM entered into, among other agreements, the Operating Agreement with HAMF and HAMF's non-managing members. The Operating Agreement made HCIM the sole managing member of HAMF.

---

[2] Compl. ¶ 1.
[3] *Id.* ¶ 4.
[4] *Id.* ¶ 1.
[5] *Id.* ¶ 11.
[6] *Id.* ¶¶ 9-10, 13-14, 18.
[7] *Id.* ¶¶ 23-25.

[9]     On or about October 1, 2013, Plaintiffs discovered that HAMF, along with HCIM, HCIP, HIP and Hatteras Investment Management, LLC ("HIM") (collectively, "Hatteras Sellers"), had entered into an asset purchase agreement ("APA") with RCS Capital Corporation ("RCS") and Scotland Acquisition, LLC ("Scotland") (collectively, "RCS Purchasers"). Under the APA, substantially all of the assets of the Hatteras Sellers, including HAMF, would be acquired by the RCS Purchasers in a single transaction ("APA Transaction").[8]

[10]     Section 2.03 of the Operating Agreement requires "Requisite Non-Managing Member Approval" for the validity of certain "Major Decisions" undertaken by HCIM in its capacity as HAMF's sole managing member. The APA, an agreement between HAMF and its "Managing Member or an Affiliate of the Managing Member," required § 2.03 approval. HCIM failed to notify HAMF about the APA Transaction at an appropriate time, and did not seek the approval of HAMF's non-managing members, including Plaintiffs. In doing so, HCIM breached the Operating Agreement.[9]

DISCUSSION

[11]     The Motion seeks Judgment on the Pleadings pursuant to Rule 12(c), which allows courts to "dispose of baseless claims or defenses when the formal pleadings reveal their lack of merit." *Ragsdale v. Kennedy*, 286 N.C. 130, 137 (1974). This is appropriate where "all the material allegations of fact are admitted in the pleadings and only questions of law remain," and the movant establishes that he or she is "clearly entitled" to judgment as a matter of law. *Id.* Judgment on the pleadings is disfavored, and the nonmovant's pleadings are to be "liberally construed." *RGK, Inc. v.*

---

[8] *Id.* ¶ 47.
[9] *Id.* ¶ 58.

*U.S. Fid. & Guar. Co.,* 292 N.C. 668, 674 (1977) (quotations and citations omitted). The court must similarly view facts and permissible inferences "in the light most favorable to the nonmoving party," and "[a]ll allegations in the nonmovant's pleadings, except conclusions of law, legally impossible facts, and matters not admissible in evidence at the trial, are deemed admitted by the movant for purposes of the motion." *Ragsdale*, 286 N.C. at 137. In assessing the motion, the court may refer only to the pleadings "and any attached exhibits, which become part of the pleadings." *Minor v. Minor*, 70 N.C. App. 76, 78 (1984), *cert. denied*, 312 N.C. 495 (1984).

[12]    The propriety of HCIM's sale of HAMF's assets without the approval of Plaintiffs ("Approval Issue") is the central issue before the court at this time, and is set for trial under the Bifurcation Order. Defendants, via the Motion, seek judgment on the pleadings as to this issue. Defendants contend that the plain language of the Operating Agreement taken as a whole gave HCIM the right to sell all or substantially all of HAMF's assets with or without Plaintiff's approval. Defendants further posit that a trial is unnecessary because no extrinsic evidence is needed to determine the outcome of this specific issue.

[13]    The Parties' briefs together make it clear that the Approval Issue – and therefore the Motion – invokes two key inquiries. First, as a matter of contractual construction, does the Operating Agreement require non-managing member approval for the sale of HAMF ("Interpretation Issue")? Second, does the APA Transaction constitute a "contract  . . . with . . . an Affiliate of the Managing Member"[10] that would

---

[10] Operating Agreement § 2.03(f).

require non-managing member approval regardless ("Affiliate Issue")? The court will address each inquiry in turn.

Interpretation Issue

[14]   The Parties agree that the Interpretation Issue may properly be decided as a matter of law on the pleadings because no extrinsic evidence is required for its determination.[11] Defendants contend that judgment as a matter of law on the Interpretation Issue and Approval Issue is proper because the Operating Agreement, taken as a whole, plainly vests HCIM with the sole authority to sell HAMF. Defendants point to, among other provisions, § 2.02, which provides HCIM, the "Managing Member," the sole authority "to Approve a Sale of [HAMF]." However, § 2.02 is explicitly subject to § 2.03 by its own terms, and the Parties' disagreement centers on the meaning of the word "with" in § 2.03(f) of the Operating Agreement.

[15]   Notwithstanding the Clintonian overtones[12] of a debate over the meaning of the word "with," the word's role is of material importance to the Interpretation Issue. Section 2.03 lays out certain "Major Decisions" which, "[n]otwithstanding anything contained in [the Operating Agreement] to the contrary," are "prohibited . . . absent . . . Requisite Non-Managing Member Approval."[13] Among those actions requiring non-managing member approval is, in relevant part, "the entering into any contract . . . with the Managing Member or an Affiliate of the Managing Member."[14] The parties vigorously

---

[11] *See* Mem. Supp. Defs.' Mot. J. Pleadings ("Defendants' Brief") at 8, Pls.' Resp. Defs.' Mot. J. Pleadings ("Plaintiffs' Brief") at 8; *see also* Erie Ins. Exch. v. Builders Mut. Ins. Co., __ N.C. App. __, __, 742 S.E.2d 803, 809 (2013) ("The construction and interpretation of provisions in [a] . . . contract is a question of law . . . [that] may be resolved by judgment on the pleadings.") (internal quotations and citations omitted).

[12] *See* Timothy Noah, *Bill Clinton and the Meaning of "Is,"* SLATE (Sept. 13, 1998 9:14 PM), http://www.slate.com/articles/news_and_politics/chatterbox/1998/09/bill_clinton_and_the_meaning_of_is.html.

[13] Operating Agreement § 2.03

[14] *Id.* § 2.03(f)

dispute whether the APA triggers this provision. In essence, Plaintiff contends that the APA is a contract that HAMF entered into "with" HCIM, and HCIM therefore breached the Operating Agreement by entering HAMF into the APA without gaining Plaintiffs' approval.

[16]    The Interpretation Issue fundamentally raises the question of what it means to say that an entity enters into a contract "with" another entity in a multi-party transaction. As Defendants note with examples, the common use of the term "with" in this context refers to the contractual binding of bargaining parties on opposite "sides" of such a transaction, while one might use "alongside" or "along with" to refer to parties on the same "side" of a contract. In fact, the language in Plaintiffs' own Complaint is consistent with such usage.[15] Plaintiffs ask for a strained interpretation of § 2.03(f), one that the court finds unpersuasive for a variety of other reasons beyond its mere inconsistency with customary usage of the term.

[17]    First and foremost, although § 2.03 by its own terms takes precedence over any other provision in the Operating Agreement, and § 2.02 is by its own terms subject to § 2.03, Plaintiffs' reading of § 2.03(f) asks this court to reach one of two anomalous conclusions: either (a) § 2.03(f) uses vague and ambiguous language to directly contradict and override § 2.02(o) in its entirety; or (b) the parties intended HCIM to have the exclusive authority to sell HAMF on its own, but not in conjunction with a sale of the other Hatteras entities. Indeed, under Plaintiffs' proffered reading of § 2.03(f),

---

[15] *See* Compl. ¶ 25(b) (HAMF "entered into several agreements with sub-advisors and subcontractors"), ¶ 47 (HAMF, "along with" the other Hatteras Sellers, entered into the APA "with" the RCS Purchasers). *But see* Compl. ¶ 67(c) (HCIM breached Operating Agreement "[b]y facilitating [HAMF] to enter into the APA with HCIM and the other Hatteras Group entities without having first obtained the Requisite Non-Managing Member").

HCIM could perhaps merely enter into two separate APAs with the RCS purchasers – one for HAMF, and a second for the rest of the Hatteras Sellers – and effectively avoid seeking non-managing member approval.

[18]    Second, Plaintiffs' reading of § 2.03(f) also conflicts with § 5.06 of the Operating Agreement. Section 5.06 places certain obligations on HAMF's members if HCIM receives an offer to sell HAMF and HCIM "proposes to accept such offer to consummate a Sale of [HAMF]," so long as the buyer is not an "Affiliate" of HCIM.[16] Subsection (c)(i) of that same provision further requires HAMF's members to vote in favor of such a proposed transaction.[17]

[19]    Even if the court felt conflicted over the plain meaning of the word "with" in the context of § 2.03(f), the rest of the Operating Agreement as a whole clearly points to the parties' intention to vest the authority to sell HAMF in HCIM alone. Whether such an arrangement was inadvertent or, more likely, the result of deliberation and bargaining by the Parties, Plaintiffs cannot rest on the dictionary definition of the word "with" to substantively rewrite the Operating Agreement to provide them with rights they failed to secure at the outset.

[20]    The court hereby CONCLUDES that the Operating Agreement provided HCIM with the exclusive right to "approve a Sale" of HAMF without Plaintiffs' authorization. Accordingly, as to the Interpretation Issue and Claims against Defendants for breach of the Operating Agreement based on the Interpretation Issue, Defendants' Motion should be GRANTED.

---

[16] Operating Agreement § 5.06(a).
[17] *Id.* § 5.06(c)(i)

<u>Affiliate Issue</u>

[21]    The Operating Agreement defines "Affiliate," as it is used therein as, among other things, any person or entity that is "directly or indirectly controlling, controlled by, or under common control with" HCIM.[18] Plaintiffs contend in their responsive brief that RCS is an "Affiliate" of HCIM. Plaintiffs argue that HCIM therefore breached the Operating Agreement by failing to seek "Requisite Non-Managing Member Approval" under § 2.03 before it entered HAMF into the APA. Plaintiffs therefore seek denial of the Motion on the ground that judgment on the pleadings is improper because the introduction of extrinsic evidence and "a fact specific analysis" is necessary to such a determination.[19]

[22]    In support of their contention that the RCS Purchasers are "Affiliates" of HCIM, Plaintiffs proffer the APA provisions allowing the Hatteras Sellers to continue operating without interference through 2018, as well as employment agreements executed by "all the Hatteras principles" allowing those individuals to "retain the same titles and control that they currently hold."[20] Plaintiffs allege that APA leaves Plaintiffs without the "protections" of the Operating Agreement and at the mercy of Perkins's decisions.[21]

[23]    Notwithstanding the fact that there is no allegation in the Complaint that the RCS Purchasers were Affiliates of HCIM prior to the APA, it is unclear how Plaintiffs' allegations give rise to control by the RCS Purchasers over HCIM or vice-versa as of the time the APA Transaction took place. As Defendants point out, there is nothing in

---

[18] Operating Agreement § 3.01(c)(iv).
[19] Pls.' Br. at 10.
[20] *Id.* at 9.
[21] *Id.*

the Operating Agreement that suggests the scrutiny of a future tense with respect to who or what constitutes an "Affiliate." Section 3.01(c)'s definitions of "Affiliate" do not include one who *will control* some person or entity. Whether a prospective purchaser *will become* an Affiliate of HCIM by virtue of a contract or other transaction is irrelevant and cannot trigger § 2.03(f).

[24] Accordingly, the court CONCLUDES that as to the Affiliate Issue and Claims against Defendants for breach of the Operating Agreement based on the Affiliate Issue, Defendants' Motion should be GRANTED.

NOW THEREFORE, based upon the foregoing, it is hereby ORDERED that:

[25] Defendants' Motion for Judgment on the Pleadings is GRANTED.

[26] HCIM has the authority to sell HAMF without the approval of Plaintiffs.

[27] Upon closing on the sale of HAMF by HCIM to RCS Purchasers, RCS Purchasers will receive clear and valid title to the assets purchased from HCIM as part of the APA.

[28] This Order is entered without prejudice to the rights of Plaintiffs to continue pursuing claims against Defendants for damages not covered within the Order's scope. That is, the Order is dispositive only as to HCIM's authority to sell HAMF's assets to RCS Purchasers without non-managing member approval, and is not intended to determine any other Claims between Plaintiffs and Defendants that may nonetheless arise out of the APA.

This the 9th day of June, 2014.